840 F.2d 691
 27 ERC 1313, 56 USLW 2523, 18 Envtl.
L. Rep. 20,470
 CADILLAC FAIRVIEW/CALIFORNIA, INC., a California
corporation, Plaintiff- Appellant.
v.
DOW CHEMICAL CO., a Delaware corporation, et al., Defendants,
and
United States of America; Gerald P. Carmen, Administrator
of the General Services Administration; William
Ruckelshaus, Administrator of the
Environmental Protection
Agency, Defendants-Appellees,
Shell Oil Company; Cabot, Cabot & Forbes Interim Company,
Respondents.
CADILLAC FAIRVIEW/CALIFORNIA, INC., a California
corporation, Plaintiff- Appellant,
v.
DOW CHEMICAL CO., a Delaware corporation; Shell Oil
Company, Defendants- Appellees,
and
Cabot, Cabot & Forbes Interim Company; Thomas Heinsheimer,
Chairman of the Board of the South Coast Air Quality
Management District; Douglas Ferguson, President of the
Central and West Basin Water Replenishment District of the
State of California; Peter Rank, Director of the State
Department of Health Services of the State of California;
Jane Bray, Acting Chairman of the Board of the Regional
Water Quality Control Board of the State of California for
the Los Angeles Region, Defendants.
 Nos. 86-6464, 86-6733.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1987.
Decided Feb. 25, 1988.
 
 Gregory R. Smith, Irell & Manella, Los Angeles, Cal., for plaintiff-appellant.
 Stephen T. Swanson, Lawler, Felix & Hall, Los Angeles, Cal., for defendant-appellee Dow.
 Edwin C. Schreiber, Keltner & Schreiber, Inc., Los Angeles, Cal., for defendant-appellee Shell.
 Maria A. Iizuka, Dept. of Justice, Washington, D.C., for defendant-appellee United States.
 Reed Sato, Deputy Atty. Gen., Sacramento, Cal., for amicus curiae.
 Appeal from the United States District Court for the Central District of California.
 Before CHAMBERS, WALLACE and POOLE, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Cadillac Fairview/California, Inc. (Cadillac Fairview) appeals the district court's judgment dismissing its claims for damages and for declaratory and injunctive relief against Dow Chemical Co. (Dow) and Shell Oil Co. (Shell) for failure to state a claim upon which relief can be granted. Cadillac Fairview also appeals the order granting summary judgment in favor of the Administrator of the General Services Administration (GSA) and the United States of America (federal defendants). On appeal, Cadillac Fairview contends that the district court's order dismissing its claims and granting summary judgment was premised on an erroneous interpretation of section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Sec. 9607(a). We have jurisdiction under 28 U.S.C. Sec. 1291 and 28 U.S.C. Sec. 1292(b). We reverse the dismissal of Cadillac Fairview's claims for damages and declaratory relief against Shell and Dow, and we reverse the summary judgment in favor of the federal defendants. We affirm the dismissal of Cadillac Fairview's claims for injunctive relief.
 
 
 2
 * Cadillac Fairview's complaint alleges that it is the owner of certain real property (the Site) located in Torrance, California. Cadillac Fairview purchased the Site from CC & F Western Development Co., Inc. (Western) in 1976. It later learned that hazardous substances had been deposited at the Site, and that these substances had migrated into the underlying soil. Cadillac Fairview conducted chemical tests and analyses at the Site, which indicated that the presence of various hazardous substances in the soil threatened to cause substantial environmental and health problems. State officials requested Cadillac Fairview to undertake certain steps to protect neighborhood residents from illnesses that might result from contact with the hazardous substances. Pursuant to the state's request, Cadillac Fairview hired engineers to conduct chemical testing at the Site to evaluate the hazards posed by the substances, erected a fence around the Site, employed a guard service to secure the Site from trespassers, and posted bilingual "no trespassing" signs at the Site. These measures allegedly cost Cadillac Fairview in excess of $70,000.
 
 
 3
 According to the complaint, the federal government acquired the Site in 1942 and constructed a rubber-producing plant on it. The government contracted with Dow to operate the facility and authorized Dow to dump hazardous by-products from the facility at the Site. In 1955, Shell acquired the Site from the government. During the period of its ownership, Shell allegedly deposited hazardous substances at the Site and took no measures to prevent the release of those substances into the environment.
 
 
 4
 Shell owned the Site until 1972. It was then owned successively by defendants International Property Development Co. (International) and by Western. Defendant Cabot, Cabot & Forbes (CCF) is the successor in interest to International and Western. None of the latter defendants are parties to this appeal.
 
 
 5
 Cadillac Fairview sued the federal defendants, Dow, and Shell in district court under CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a), to recover its costs of responding to the hazardous substances. Cadillac Fairview also requested a declaration that any cleanup costs or other damages resulting from the presence of the hazardous substances should be borne only by Dow, Shell, the federal defendants, or others who owned the property at the time of the dumping or who were responsible for such dumping. Finally, it requested an injunction requiring Dow, Shell, CC & F, and the GSA to remove hazardous wastes from the Site. Cadillac Fairview also brought state law claims against various defendants.
 
 
 6
 On the motions of Dow and Shell, the district court dismissed Cadillac Fairview's CERCLA claims for failure to state a claim upon which relief could be granted, and dismissed the pendent state law claims for lack of jurisdiction. The district court certified its order for immediate appeal under section 1292(b). The federal defendants' motion for summary judgment was granted, and the judgment certified for appeal under Fed.R.Civ.P. 54(b). We consolidated the appeals.
 
 II
 
 7
 We review de novo the district court's dismissal of Cadillac Fairview's federal claims for failure to state a claim upon which relief could be granted. Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 889 (9th Cir.1986) (Wickland ). We must accept all the material allegations in the complaint as true and view them in the light most favorable to Cadillac Fairview. Id. at 889-90. The dismissal must be reversed unless it appears to a certainty that Cadillac Fairview is not entitled to relief under any state of facts that it could have proved. Id. at 890.
 
 
 8
 Section 107(a)(2)(B) expressly creates a private claim against any person who owned or operated a facility at the time hazardous substances were disposed of at the facility for recovery of necessary costs of responding to the hazardous substances incurred consistent with the national recovery plan. See id. at 890; NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986) (NL Industries ). Cadillac Fairview alleged that it incurred "necessary costs" of response within the meaning of section 107(a), and that Dow, Shell, and the federal defendants owned or operated the Site at the time that hazardous substances were deposited there. Despite these allegations, the district court dismissed Cadillac Fairview's suit against the private defendants for failure to state a claim under section 107(a).
 
 
 9
 The district judge based his decision to dismiss Cadillac Fairview's damages claims on its failure to await governmental action with respect to the Site before bringing suit. The court held that in order for a private response action to be "consistent with the national contingency plan," it must be "initiated and coordinated by a governmental entity, and not by a private individual acting alone." The court also stated that the costs incurred by Cadillac Fairview were not compensable response costs under section 107 because they did not constitute "cleanup costs" within the meaning of the national contingency plan.
 
 
 10
 In defense of the district court's ruling, Dow argues that a private action under section 107(a) must be preceded by federal governmental action with respect to the property in question. This argument ignores our holdings in Wickland and NL Industries. In Wickland, we rejected the defendant's argument that in order to incur costs "consistent with the national contingency plan," a private party must act pursuant to federal governmental authorization. 792 F.2d at 891-92. Though the national contingency plan describes the role of lead agencies in examining information and determining appropriate responses to environmental hazards, id. at 891, we held that such provisions do not constrain private parties seeking to recover response costs under section 107(a). Id. at 892. We concluded that this reading of section 107(a) was supported both by "the lack of any procedure whereby a private party could seek to obtain prior governmental approval of a cleanup program" and by CERCLA's broad remedial purpose to promote private enforcement actions "independent of governmental actions financed by Superfund." Id. at 892. In NL Industries, we reaffirmed our holding in Wickland, and rejected the argument that response costs cannot be deemed "necessary" in the absence of lead agency approval of the cleanup. 792 F.2d at 898. Because Dow's contention that action by the federal government or by a lead agency is a necessary prerequisite to a private response action under section 107(a) is indistinguishable from the arguments rejected in Wickland and NL Industries, we need not consider it further.
 
 
 11
 Shell makes a different argument in support of the district court's ruling. Shell argues that although no federal involvement is necessary, some significant state or local governmental action must precede a response action for which recovery is possible under section 107(a). It then argues that the state's action in requesting Cadillac Fairview to undertake certain measures with regard to the Site in the present case is too insubstantial to constitute "significant" governmental involvement.
 
 
 12
 Shell, however, cites no authority for the proposition that significant state or local governmental action is a necessary prerequisite to a private action under section 107(a). Nor is there any mention of such a requirement in either section 107 or in the national contingency plan. We are thus reluctant to read a state or local governmental action requirement into the statute absent some strong indication that Congress intended that private parties await action by a state or local government before commencing a response action. Our examination of CERCLA's provisions leads us to conclude that significant state or local governmental action need not precede a response action for that action to be either "necessary" or "consistent with the national contingency plan."
 
 
 13
 First, there is nothing in the plain language of section 107(a) that indicates that a party seeking to recover its costs of response must await approval of or action by a state or local governmental entity. In contrast, CERCLA Sec. 111(a)(2), 42 U.S.C. Sec. 9611(a)(2), specifically provides that necessary costs may be recovered from the Superfund only if such costs are approved under the national contingency plan and certified by the responsible federal official. The absence of an approval or certification requirement in section 107(a) justifies the inference that parties not seeking reimbursement from the Superfund need not obtain prior governmental approval for their response action to be "necessary" or "consistent with the national contingency plan" under section 107(a).
 
 
 14
 Second, the statute fails to provide any mechanism through which a party could seek approval from state or local entities or prompt such entities to undertake significant action with respect to a contaminated facility. In Wickland, we observed that the lack of any procedure in CERCLA by which a private party could seek prior governmental approval of a cleanup program indicated that such approval was not a prerequisite to an action under section 107(a). See 792 F.2d at 892. We find that reasoning persuasive here. Neither CERCLA nor the national contingency plan describes a procedure whereby a private party could coordinate its response efforts with those of a local or state government or seek the approval of state or local governmental entities before commencing a response action. Indeed, there is no indication in the statute that prior approval or action by a state or local government is either necessary or desirable.
 
 
 15
 Finally, we observe that requiring significant state or local governmental action with regard to facilities described in section 107 would result in requiring these governmental entities to devote their limited resources to this procedure. There is no indication in the statute that Congress contemplated placing this burden on state and local governments.
 
 
 16
 Dow argues that without preliminary governmental action, a defendant can be forced to pay for cleanup actions that are inadequate or ill-conceived. This argument ignores the plain language of the statute. Section 107(a) does not allow recovery of any and all costs of response that a private party incurs. To recover costs under section 107(a), the party undertaking the response action must prove that the costs it incurred were "necessary" and that it incurred those costs in a manner "consistent with the national contingency plan." A response action is consistent with the plan for purposes of section 107 only if it satisfies criteria set forth in pertinent regulations. See, e.g., 40 C.F.R. 300.71(a)(2) (1986). Under this statutory and regulatory scheme, the question whether a response action is necessary and consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage of a section 107(a) action, rather than by the mechanism of prior governmental approval. Dow and Shell will have ample opportunity at trial to express their concern that the costs incurred by Cadillac Fairview in this case were unnecessary or inconsistent with the national contingency plan.
 
 
 17
 Dow's doubts regarding the wisdom of allowing section 107(a) response actions to proceed without governmental authorization should be addressed to Congress rather than to the courts. The plain language of section 107(a) compels us to reject an interpretation of CERCLA that would create a significant obstacle to private response actions not contemplated by Congress. We conclude, therefore, that the district court erred in ruling that some governmental entity must authorize and initiate a response action for that action to be necessary and consistent with the national contingency plan.
 
 
 18
 As an alternative ground for the dismissal of Cadillac Fairview's damages claims, the district court held that Cadillac Fairview failed to allege that it incurred "cleanup" costs within the meaning of section 107(a). We rejected the distinction between investigatory costs and on-site cleanup costs in Wickland. 792 F.2d at 892. Section 107(a)(2)(B) allows recovery of "costs of response," which includes costs incurred "to monitor, assess, and evaluate the release or threat of release of hazardous substances," and costs of actions "necessary to prevent ... damage to the public health ... [including] security fencing or other measures to limit access." See CERCLA Sec. 101(23), 42 U.S.C. Sec. 9601(23). The testing and security expenditures alleged by Cadillac Fairview fall within the ambit of those defined by section 9601(23). The district court thus erred in holding that Cadillac Fairview failed to state a claim for recovery of those costs under section 107(a)(2)(B).
 
 III
 
 19
 Cadillac Fairview also pleaded a section 107(a) claim for damages against the federal defendants on the basis of their prior ownership of the Site. The federal defendants asserted various defenses to Cadillac Fairview's claim, including a defense of sovereign immunity. Because the district court held that Cadillac Fairview's failure to allege prior governmental action with regard to the Site entitled the federal defendants to judgment as a matter of law, it did not address the federal defendants' other defenses in its ruling. Because we hold that prior governmental action is not a prerequisite to a 107(a) suit, we reverse the summary judgment and remand the damages claim against the federal defendants for further consideration.
 
 IV
 
 20
 Pursuant to 28 U.S.C. Sec. 2201, Cadillac Fairview sought a declaration that Dow, Shell, and the federal defendants were solely and entirely liable under CERCLA and other applicable law for the existence of any hazardous substances at the Site. The district court ruled that these claims for declaratory relief were premature in the absence of a governmental enforcement action under CERCLA against Cadillac Fairview.
 
 
 21
 In Wickland, we held that the essential fact establishing a CERCLA plaintiff's right to declaratory relief is the alleged disposal of hazardous substances at the site in question. Id. at 893. The absence of a government enforcement action under CERCLA does not render the controversy between the party seeking declaratory relief and the party who owned the site at the time of hazardous waste disposal remote and hypothetical. Id. Our analysis of the ripeness issue in Wickland compels reversal in this case as well. Cadillac Fairview has alleged the occurrence of the essential facts establishing its right to a declaratory judgment. Therefore, we reverse the district court's dismissal of this claim against Dow and Shell, and reverse the summary judgment in Cadillac Fairview's suit for declaratory relief against the federal defendants for further consideration.
 
 V
 
 22
 Cadillac Fairview also pleaded a claim for injunctive relief ordering Dow, Shell, CC & F, and the federal defendants to undertake appropriate response actions with respect to the Site in a manner consistent with the national contingency plan. Cadillac Fairview predicated this claim on its request for declaratory relief. The district court dismissed the claims for injunctive relief, holding that no private cause of action for injunctive relief exists under CERCLA. Cadillac Fairview argues that our holding in Wickland establishes a right to injunctive relief under CERCLA.
 
 
 23
 In Wickland, the district court predicated its dismissal of Wickland's suit for injunctive relief on its ruling that Wickland was not entitled to declaratory relief. 792 F.2d at 893. Because we held that the dismissal of Wickland's claims for declaratory relief was improper, we reversed the dismissal of Wickland's claims for injunctive relief to allow the court to give further consideration to this claim. Id. We did not hold thereby that a private action for injunctive relief exists under CERCLA; we merely remanded the claim to the district court to allow the court to examine the question in the first instance.
 
 
 24
 In the present case, the district court fully considered the question whether CERCLA establishes a private right of action for injunctive relief. The district court examined CERCLA's provisions and found that the only private remedy provided in CERCLA is the private cause of action for response costs described in section 107(a). Under section 107(a), the United States, a State, an Indian Tribe, or any other person may recover necessary costs of response incurred consistent with the national contingency plan. There is no mention of a right to injunctive relief in section 107(a). In contrast, under section 106(a), the President may require the Attorney General to seek injunctive relief "when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment." 42 U.S.C. Sec. 9606(a). The district court concluded that the failure to provide for injunctive relief in section 107(a), coupled with the absence of any provision for a private right of action under section 106(a), mandated the conclusion that Congress did not intend to create a private cause of action for injunctive relief under CERCLA.
 
 
 25
 We find convincing the inference that the district court drew from construing sections 106 and 107 together. Section 107(a) allows the United States, States, Indian tribes, and other persons to recover their necessary costs of response from owners and operators as defined by section 107(a)(2), but makes no mention of injunctive relief. Section 106(a), by contrast, expressly grants the President authority to seek injunctive relief under limited circumstances. We agree with the Second Circuit that to imply a private right of action for injunctive relief into section 107(a) would render the express grant of injunctive authority in section 106(a) redundant. State of New York v. Shore Realty Corp., 759 F.2d 1032, 1049 (2d Cir.1985). Moreover, to allow parties entitled to damages under section 107(a) to seek injunctive relief under that section would enable such parties to bypass the specific limitations on the President's authority to seek injunctive relief described in section 106(a). We find this result inconsistent with the plain language of the statute. See Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929) ("When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.").
 
 
 26
 We conclude, therefore, that CERCLA Sec. 107(a) does not provide for a private right to injunctive relief against owners and operators as defined by section 107(a)(2). Sections 106(a) and 107(a) indicate that when Congress wished to provide for injunctive relief under CERCLA, it knew how to do so and did so expressly. The district court's dismissal of Cadillac Fairview's claims for injunctive relief against Dow, Shell, CC & F, and the federal defendants is affirmed.
 
 VI
 
 27
 Cadillac Fairview challenges the dismissal of its pendent state law claims against Dow and Shell. The district court based its dismissal of these pendent claims on its ruling that Cadillac Fairview failed to state a claim arising under CERCLA. Because we hold that Cadillac Fairview's claims for damages and declaratory relief stated claims for relief under CERCLA Sec. 107(a), we reverse the dismissal of the state law claims and remand them for further consideration.
 
 
 28
 REVERSED AND REMANDED IN PART; AFFIRMED IN PART.