**STANTON ROAD ASSOCIATES,**
Plaintiff–Appellee,

v.

**LOHREY ENTERPRISES,** Electronic Valet Systems, Inc., David Lohrey, Nathan Pang, Defendants–Appellants.

No. 91–15729.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1992.

Decided Jan. 28, 1993.

Robert H. Bunzel, Bartko, Tarrant & Miller, San Francisco, CA, for defendants-appellants.

Steven L. Hock, Thelen, Marrin, Johnson & Bridges, San Francisco, CA, for plaintiff-appellee.

Before: SNEED, ALARCON and CANBY, Circuit Judges.

ALARCON, Circuit Judge:

Appellants Lohrey Enterprises, Inc., Electronic Valet Systems, Inc., David Lohrey, and Nathan Pang (collectively, "Lohrey") appeal from the award of attorneys' fees to Stanton Road under section 107(a)(4)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a)(4)(B). Lohrey also seeks reversal of the order requiring it to pay $1,100,000 in monetary damages to Stanton Road Associates ("Stanton Road") for deposit in an escrow account to fund the clean-up of Stanton Road's property.

This case presents us with two novel issues. First, we must decide whether Congress has explicitly authorized attorneys' fees to private litigants as part of the response costs incurred in cleaning up property contaminated by a hazardous substance. We are also confronted with the question regarding whether a district court may order a party found liable for contamination to pay monetary damages for deposit in an escrow account to fund the future clean-up of the contamination.

We conclude that Congress has not expressly provided for an award of attorneys' fees to private parties seeking to recoup response costs under CERCLA. We further hold that the order that Lohrey pay $1,100,000 in monetary damages to Stanton Road constitutes an award of future response costs in violation of CERCLA. We reverse the award of attorneys' fees and vacate the order requiring Lohrey to pay $1,100,000 to Stanton Road as monetary damages to fund a future response action.

I.

Lohrey owned and operated a dry cleaning plant on property contiguous to Stanton Road's property. While the dry cleaning plant was in operation, the hazardous chemical perchlorethelene was allowed to spill onto the adjoining alley. The chemical contaminated Stanton Road's property. Stanton Road brought this action seeking declaratory relief and response costs under CERCLA, and damages under pendent state law claims alleging trespass, negligence, and nuisance.

At trial, Stanton Road introduced expert testimony that the clean-up of Stanton Road's property would cost between $775,-

000 and $1,100,000. Stanton Road also introduced evidence that the minimum amount of funding necessary for an environmental firm to undertake the clean-up would be $1,100,000. Lohrey did not offer any evidence at trial to contradict Stanton Road's testimony regarding the estimated cost of the proposed remediation.

The district court found Lohrey liable for the contamination. The court awarded Stanton Road $77,374 in response costs, $389,925 in damages under the state law claims, and $126,198 in attorneys' fees under CERCLA. Lohrey was also ordered to pay Stanton Road $1,100,000 to fund the clean-up of Stanton Road's property. That portion of the order provides as follows:

> *Defendants, jointly and severally, are ordered to pay to Stanton the additional sum of one million one hundred thousand dollars ($1,100,000).* Stanton shall deposit said sum in an interest bearing escrow trust account ("Cleanup Escrow") established to implement the remediation of 860 Stanton Road as expeditiously as possible by the environmental consulting firm PES Environmental, Inc. ("PES"). Defendants shall have no control over the Cleanup Escrow fund, other than to monitor the expenditures therefrom. Payments from the Cleanup Escrow fund for cleanup services rendered shall be paid out as invoices are received and work is reviewed and approved by PES principals. Copies of said invoices shall be provided to a party to be designated jointly by all defendants.
>
> The Cleanup Escrow will terminate upon written certification from PES that the 860 Stanton Road property has been remediated in accordance with all relevant regulatory cleanup levels and requirements.
>
> If unused funds remain in the Cleanup Escrow at the time of termination, such funds will be distributed as follows:
>
> First, all unused funds shall be paid out to Stanton in order to satisfy any money damages awarded to Stanton in this judgment that remain unpaid as of the date of the termination of the escrow.... *In the event all monetary damages awarded Stanton have 'been*

satisfied in full upon termination of the Cleanup Escrow, all remaining sums shall be paid out to defendants on a pro rata basis according to the percentage that each defendant paid funds into the original Cleanup Escrow.

(emphasis added).

The judgment was entered on April 15, 1991. Lohrey filed a timely notice of appeal. It did not seek a stay of the judgment until May 29, 1992. The district court denied the motion.

The district court did not indicate in its judgment whether the monetary damages were awarded pursuant to CERCLA or under the pendent state law claims. In an attempt to clarify the basis for the award of monetary damages, we issued an order requesting the district court to enter an order indicating whether its award was based on state law or CERCLA. In response, the district court informed us that it awarded Stanton Road $1,100,000 under both CERCLA and state law.

## II.

### *Attorneys' Fees*

■ Lohrey contends that the district court erred in awarding attorneys' fees to Stanton Road. They argue that CERCLA does not authorize attorneys' fees in private response cost actions. We review the district court's interpretation of CERCLA de novo. *Idaho v. Howmet Turbine Component Co.*, 814 F.2d 1376, 1378 (9th Cir. 1987).

Stanton Road contends that a private litigant may recover attorneys' fees under CERCLA as "necessary costs of response" pursuant to 42 U.S.C. § 9607(a)(4)(B). Section 9607(a) provides in pertinent part:

> [A]ny person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... any other necessary costs of response incurred by any other person consistent with the national contingency plan.

42 U.S.C. § 9607(a). Section 101(25) defines "response" as "remove, removal, remedy, and remedial action, ... includ[ing] *enforcement activities related thereto.*" 42 U.S.C. § 9601(25) (emphasis added). Stanton Road maintains that an action by a private litigant to recover response costs is an "enforcement activity" within the meaning of the statute.

The question whether CERCLA authorizes private parties to recover attorneys' fees as enforcement costs is a matter of first impression in this circuit. The Eighth Circuit has concluded that CERCLA authorizes private parties to recover attorneys' fees as "necessary costs of response." *General Elec. Co. v. Litton Indus. Automation Sys., Inc.,* 920 F.2d 1415, 1421–22 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). The Eighth Circuit reasoned that a "private party cost-recovery action ... [under section 107(a)(4)(B) ] is an enforcement activity within the meaning of the statute." *Id.*

While we characterized an action to recover costs under section 107(a)(4)(B) in *Cadillac Fairview/California, Inc. v. Dow Chem. Co.,* 840 F.2d 691, 694 (9th Cir.1988) as a private response action, we were not required to consider in that matter whether CERCLA authorizes a private party to recover its attorneys' fees. In *Cadillac Fairview,* we held that a private litigant may initiate an action pursuant to section 107(a) to recover the costs of testing for contamination and employing a guard service in responding to the hazardous substances, without waiting for governmental action concerning the contaminated site. *Id.* at 694–95.

The district courts in this circuit disagree on the question whether response costs include attorneys' fees incurred by private litigants. *Compare Pease & Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 952 (C.D.Cal.1990) (private parties may recover attorneys' fees as costs of response under section 107(a)(4)(B)) *with Santa Fe Pac. Realty Corp. v. United States,* 780 F.Supp. 687, 695 (E.D.Cal.1991) (attorneys' fees are not

recoverable as response costs under section 107(a)(4)(B)).

Under the American Rule, a prevailing party may not recover attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). In *Alyeska,* the plaintiffs temporarily halted construction of an oil pipeline in Alaska. *Id.* at 242, 95 S.Ct. at 1614. The Court of Appeals for the District of Columbia awarded attorneys' fees to the plaintiffs. *Id.* at 245, 95 S.Ct. at 1615. The court reasoned that the plaintiffs had vindicated "important statutory rights of all citizens" and had insured that the governmental process had functioned properly. *Id.* Thus, they were entitled to attorneys' fees to encourage private parties to undertake litigation that benefits the public. *Id.* at 245–46, 95 S.Ct. at 1616.

The Supreme Court reversed. The Court instructed that under the American Rule, a prevailing party cannot recover attorneys' fees in the absence of congressional authority. *Id.* at 269, 95 S.Ct. at 1627. The Court stated that it was up to Congress to "carve out specific exceptions" to the general rule against providing attorneys' fees to the prevailing litigant. *Id.* The Court reasoned that a court is not

> free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.

*Id.*

In *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Court explained that "the law of the United States ... has always been that absent *explicit* congressional authorization, attorneys' fees are not a recoverable cost of litigation." *Id.* at 185, 96 S.Ct. at 2602 (emphasis added). The Court stated that attorneys' fees cannot be awarded unless "Congress intended to set aside [a] long-

standing American rule of law." *Id.* at 185–86, 96 S.Ct. at 2602.

We are persuaded that the words "enforcement activities" as used in section 101(25) do not explicitly authorize the payment of attorneys' fees. Congress has repeatedly demonstrated that it knows how to express its intention to create an exception to the American Rule.

For example, in section 310(f) of CERCLA, Congress authorized courts to "award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing party or the substantially prevailing party whenever the court determines such an award is appropriate" in citizen suit actions. 42 U.S.C. § 9659(f). Similarly, section 104(b) of CERCLA provides that the "President ... may undertake such planning, *legal,* fiscal, [or] economic, ... to plan and direct response actions [and] to recover the costs thereof." 42 U.S.C. § 9604(b) (emphasis added). When compared to the express provisions for attorneys' fees in these sections of CERCLA, the term "enforcement activities" would appear to be "outside even the most exhaustive lexicon of customary fee shifting language." *Santa Fe Pac. Realty,* 780 F.Supp. at 695. Moreover, the fact that those district courts that have confronted this issue disagree on the question whether attorneys' fees are allowable under section 101(25) and 107(a)(4)(B) demonstrates that the words "enforcement activities" do not explicitly signal, with any persuasive degree of clarity, that Congress intended to provide for an award of attorneys' fees to private litigants. *See Litton,* 920 F.2d at 1422 n. 10 (noting that district courts have split on whether attorneys' fees are recoverable by private parties as a necessary cost of response).

 Ordinarily, where there is a dispute regarding whether a statute applies to the facts before the court, we first look to the plain meaning of the language used by Congress. *Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801, 803 (9th Cir.1989). If the words used in the statute are ambiguous, however, we must consult the legislative history to determine the intent of Congress. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The rule set forth in *Alyeska* and *Runyon,* however, precludes us from implying from ambiguous language an intent that attorneys' fees can be awarded in a private response action. Under *Alyeska* and *Runyon,* the American Rule must be applied unless Congress explicitly authorizes the courts to award attorneys' fees. *Alyeska,* 421 U.S. at 269, 95 S.Ct. at 1627; *Runyon,* 427 U.S. at 185, 96 S.Ct. at 2601. The words "necessary costs of response" do not expressly authorize an award of attorneys' fees for legal expenses incurred in remediating the contamination of property.

Stanton Road argues that we should adopt the Eighth Circuit's interpretation of the words "necessary costs of response." We decline to do so because we are unpersuaded by the Eighth Circuit's analysis of the issue.

The Eighth Circuit's explanation of its holding is contained in the following paragraph:

As noted earlier, 42 U.S.C. § 9607(a)(4)(B), allows private parties to recover "necessary costs of response ... consistent with the national contingency plan." 42 U.S.C. § 9601(25) defines "response" as "remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') *include enforcement activities related thereto.*" (Emphasis added). A private party cost-recovery action such as this one is an enforcement activity within the meaning of the statute. *See Cadillac Fairview/California, Inc. v. Dow Chem. Co.,* 840 F.2d 691, 694 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 892 (9th Cir. 1986). Attorney fees and expenses necessarily are incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the "necessary costs" that section 9607(a)(4)(B) allows private parties to recover. We therefore conclude that CERCLA authorizes, with a sufficient degree of explicitness, the

recovery by private parties of attorney fees and expenses. This conclusion based on the statutory language is consistent with two of the main purposes of CERCLA—prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter (such as GE) were forced to absorb the litigation costs of recovering its response costs from the polluter. The litigation costs could easily approach or even exceed the response costs, thereby serving as a disincentive to clean the site.

*Litton*, 920 F.2d at 1421–22 (emphasis in the original).

We agree with the Eighth Circuit that attorneys' fees are ordinarily expended in a private response action. This truth does not, however, permit a federal court to read into the phrase, "necessary costs of response," explicit congressional authority to award attorneys' fees. Attorneys' fees are incurred in every private action to enforce rights embodied in a federal statute where the litigant is represented by counsel. The cost of representation cannot be shifted by implication under the American Rule. *Runyon*, 427 U.S. at 185, 96 S.Ct. at 2601. A holding that attorneys' fees are not explicitly authorized in a private response action does not "read them out" of section 9607(a)(4)(B), as suggested by the Eighth Circuit. To the contrary, to uphold the district court's award of attorneys' fees in a private response action, we would have to read into the statute words not explicitly inserted by Congress. The Supreme Court instructed us in *Alyeska* and *Runyon* that we lack such power.

The Eighth Circuit's reliance on the policy underlying CERCLA to support its conclusion that Congress must have intended that litigants may recover attorneys' fees in a private response action is also misplaced. We cannot imply authority to award attorneys' fees because we determine that such a rule would enhance public policy. The Supreme Court rejected this notion in *Alyeska*:

It is true that under some, if not most, of the statutes providing for the allowance of reasonable fees, Congress has opted to rely heavily on private enforcement to implement public policy and to allow counsel fees so as to encourage private litigation.... But congressional utilization of the private-attorney-general concept can in no sense be construed as a grant of authority to the Judiciary to jettison the traditional rule against non-statutory allowances to the prevailing party and to award attorneys' fees whenever the courts deem the public policy furthered by a particular statute important enough to warrant the award.

*Alyeska*, 421 U.S. at 263, 95 S.Ct. at 1624.

If Congress determines that an exception to the American Rule is appropriate in private response actions, it will do so in explicit terms as it has previously done in other parts of CERCLA. *See* 42 U.S.C. §§ 9604(b), 9659(f). Because Congress has not explicitly authorized an award of legal expenses as necessary response costs, the district court had no authority to award attorneys' fees to Stanton Road. *Runyon*, 427 U.S. at 185, 96 S.Ct. at 2601.

### III.

*Validity of the Award of Monetary Damages for Future Response Acts*

1. *Mootness*

■ Stanton Road asserts that the validity of the order requiring Lohrey to pay monetary damages in the sum of $1,100,-000 is moot because most of the funds placed in the escrow account have been expended to pay for remediation costs. We disagree. Lohrey appeals from the judgment ordering it to pay monetary damages to Stanton. The fact that payments have been made in satisfaction of a money judgment does not foreclose an appeal. *United States ex rel. Morgan & Son Earth Moving, Inc. v. Timberland Paving & Constr. Co.*, 745 F.2d 595, 598 (9th Cir.1984).

2. *Waiver*

■ The parties disagree regarding whether Lohrey objected before the trial court to the validity of the order requiring

it to pay $1,100,000 in monetary damages to Stanton Road for deposit in an escrow account. We need not decide whether the issue was raised in the district court because the question whether CERCLA permits the recovery of future response costs is a matter of law, and the challenged order is part of the record. *See White v. McGinnis*, 903 F.2d 699, 700 n. 4 (9th Cir.) (en banc) (appellate courts may consider issues raised for first time on appeal if the "issue is purely one of law and the pertinent record has been fully developed") *cert. denied*, 498 U.S. 903, 111 S.Ct. 266, 112 L.Ed.2d 223 (1990) (quoting *United States v. Gabriel*, 625 F.2d 830, 832 (9th Cir. 1980)).

### 3. *Validity of The Award of Future Response Costs Under CERCLA*

█ Lohrey contends that the district court erred in ordering Lohrey to pay Stanton Road $1,100,000 to fund the clean-up of its property, because CERCLA prohibits awards of future response costs. We agree.

In ordering Lohrey to pay future response cost damages, the court believed that it could avoid holding further proceedings at which Stanton Road would be required to show that the costs it incurred were necessary to clean up the contamination and were consistent with the national contingency plan. The district court explained its motivation as follows:

> I am just going to give you a judgment and give you an amount of money of what it would take [to clean up the property]. In these cases the court would have 50,000 cases on their docket waiting some sort of a resolution. I don't know if declaratory relief is really a basis of sense in this case.

Section 107(a)(4)(B) permits a private party to recover costs incurred in responding to the contamination. 42 U.S.C. § 9607(a)(4)(B). CERCLA further provides for a declaratory judgment action to establish liability for *future* response costs. 42 U.S.C. § 9613(g)(2). Section 9607(a)(4)(B) limits damages in private response actions to expenses that were "necessary" and

"consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). We held in *Dant & Russell v. Burlington N. R.R. Co.* that CERCLA requires plaintiffs "to actually incur response costs before they can recover them." 951 F.2d 246, 250 (9th Cir.1991). Thus, the district court erred in ordering Lohrey to pay monetary damages of $1,100,000 for clean-up costs that Stanton Road had not incurred. Furthermore, because Stanton Road had not cleaned up its property at the time the district court entered its judgment, it failed to meet its burden of proving in an adversary proceeding that its expenses were necessary and incurred in a manner consistent with the national contingency plan. *See Cadillac Fairview*, 840 F.2d at 695 ("To recover costs under section 107(a) the party undertaking the response action must prove that the costs it incurred were 'necessary' and that it incurred those costs in a manner 'consistent with the national contingency plan.'").

The award of monetary damages to Stanton Road to fund a future clean-up of Stanton Road's property violated CERCLA. Therefore, that portion of the award of monetary damages that was based on CERCLA cannot stand.

### 4. *Validity of the Award of Monetary Damages Under State Law*

█ The district court has informed this court that the $1,100,000 monetary damage award was ordered pursuant to both CERCLA and state law. Lohrey contends that an award of monetary damages under state law is invalid because it would permit the plaintiff to circumvent the requirement under CERCLA that response costs be necessary and consistent with the national contingency plan. This argument is meritless.

CERCLA provides that "[n]othing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d). CERCLA further precludes a plaintiff from recovering cost of repair damages under

both CERCLA and state law. 42 U.S.C. § 9614(b). Thus, the express language of the statute defeats Lohrey's contention that CERCLA preempts a state law recovery. *See Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 127 (3d Cir.1991) (the prohibition in 42 U.S.C. section 9614(b) against double recovery for removal costs "would be unnecessary and inexplicable if ... costs that may be recovered under CERCLA may not be recovered under state law").

Lohrey further contends that the district court awarded Stanton Road damages for the diminution in market value of its property under state law. Lohrey argues that the award of monetary damages in the sum of $1,100,000 will result in a double recovery under state law. *See Armitage v. Decker*, 218 Cal.App.3d 887, 905, 267 Cal. Rptr. 399 (1990) ("[T]he cost of repair ... and the difference in market value before and after injury are *alternate* means of achieving [the same] ... compensation [for tortious injury to property.]") (emphasis added).

Contrary to Lohrey's contention, the district court did not award Stanton Road damages for diminution of the market value of the property due to the contamination. Rather, the district court found that Stanton Road contracted to sell the property for $1,420,000 on September 1, 1988, and that the buyer refused to go through with the sale upon learning of the contamination. On January 31, 1990, Stanton Road entered into a contract with another buyer to sell the property, with the sale being contingent on Stanton Road's remediation of the property. The district court awarded Stanton Road $199,159, representing the loss of use of $1,420,000 from September 1, 1988 to January 31, 1990 at 9.25% interest. The district court also awarded damages to Stanton Road for expenses incurred in maintaining the property from September 1, 1988 to January 31, 1990. The award of damages was not intended to compensate Stanton Road for the lost market value of the property.

## IV.

### *Conclusion*

The award of monetary damages for future response costs violated CERCLA and must be vacated. The district court failed to indicate what portion of the monetary damages awarded to Stanton Road was compensation for the costs of repair based on a finding of liability under the state law claims.

Accordingly, we vacate the award of monetary damages. Upon remand, the district court is directed to conduct further proceedings. Before awarding any response costs under CERCLA, the district court must require Stanton Road to meet its burden of proof under section 9607(a)(4)(B) that any clean up expenses it incurred were necessary and consistent with the national contingency plan. If the court determines that damages should be awarded under state law, it is requested to prepare express findings and conclusions of law that specify the cost and the nature of the repairs attributable to a violation of state law.

VACATED and REMANDED with directions.

CANBY, Circuit Judge, dissenting:

With all respect, I cannot agree with two major conclusions reached by the majority. In my view, plaintiff's attorneys' fees are properly recoverable under section 107(a)(4)(B) and the amended version of section 101(25) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a)(4)(B) and 9601(25). In addition, I would not reserve the district court's establishment of an escrow fund, nor would I reach the question of that court's power to create such a fund, because I believe that this issue was never properly raised by the defendants in the district court.[1]

---

**1.** I agree with the majority's conclusion that the case is not moot, and with its treatment of the validity of the damages award under state law.

*Attorneys' Fees*

The plaintiff, Stanton Road, owns land that the defendants contaminated by repeated discharges of perchlorethelene over a period of years. Accordingly, Stanton Road is entitled under section 107(a)(4)(B) of CERCLA to recover from the defendants its "necessary costs of response." When CERCLA was first enacted, "response" was defined in section 101(25), 42 U.S.C. § 9601(25), as follows: " 'respond' or 'response' means remove, removal, remedy, and remedial action." Had this case arisen between 1980 and 1986, then, Stanton Road would have been entitled to recover its "costs of remedial action." Those recoverable costs might reasonably have been interpreted to be only those incurred in the physical cleanup of the site.

In 1986, however, Congress enacted the Superfund Amendment and Reauthorization Act, which amended section 101(25) of CERCLA to provide: "The terms 'respond' or 'response' means remove, removal, remedy, and remedial action, *all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto.*" (Emphasis added). In the scheme of CERCLA, this language must mean that private plaintiffs can recover the attorneys' fees expended in enforcing the liabilities that CERCLA imposes on polluters.

CERCLA is to a large degree a machine driven by private litigation or the threat of it. As the plurality opinion of the Supreme Court in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), observed:

> Congress did not think it enough ... to permit only the Federal Government to recoup the costs of its own cleanups of hazardous-waste sites; the Government's resources being finite, it could neither pay up front for all necessary cleanups nor undertake many different projects at the same time. Some help was needed, and Congress sought to encourage that

help by allowing private parties who voluntarily cleaned up hazardous-waste sites to recover a proportionate amount of the costs of cleanup from the other potentially responsible parties.

*Id.* at 21–22, 109 S.Ct. at 2285. Thus our court has not hesitated to characterize private actions under section 107 of CERCLA as "private enforcement actions." *Wickland Oil Terminals v. ASARCO, Inc.,* 792 F.2d 887, 892 (9th Cir.1986); *Cadillac Fairview/California, Inc. v. Dow Chemical Co.,* 840 F.2d 691, 694 (9th Cir.1988).

When Congress amended CERCLA to permit such private litigants, among others, to recover the "costs" of "enforcement activities," it is difficult to imagine what it might have had in mind other than the recovery of attorneys' fees. The "enforcement" of CERCLA by a private party consists in suing to hold the polluter liable. The lion's share of the enforcement cost, as opposed to cleanup cost, will lie in attorneys' fees. Congress cannot have been ignorant of that fact. A private party simply cannot recover its cost of enforcement if it cannot recover its attorneys' fees. If the language of Congress in sections 107(a)(4)(B) and 101(25) is to be given meaning and effect, those fees must be recoverable.

This is the conclusion reached by the only other circuit to have addressed the question.[2] In *General Electric Co. v. Litton Industrial Automation Systems, Inc.,* 920 F.2d 1415 (8th Cir.1990), the Eighth Circuit ruled:

> Attorney fees and expenses are necessarily incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the "necessary costs" that section 9607(a)(4)(B) allows private parties to recover. We therefore conclude that CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorney fees and

---

**2.** The question whether private parties could recover litigation costs under section 107(a)(4)(B) was recently presented to the Tenth Circuit, but that court declined to address that broad question. *See United States v. Hardage,*

982 F.2d 1436, 1447 (10th Cir.1992). It affirmed a denial of the fees on the narrower ground that the district court had not erred in its factual determination that the litigation costs had not been necessary. *Id.* at 1447–48.

expenses. This conclusion based on the statutory language is consistent with two of the main purposes of CERCLA—prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter ... were forced to absorb the litigation costs of recovering its response costs from the polluter. The litigation costs could easily approach or even exceed the response costs, thereby serving as a disincentive to clean the site.

*Id.* at 1422.

The majority here resists reading "costs" of "enforcement activities" to include attorneys' fees because Congress elsewhere has used the phrase "attorneys' fees" or, less explicitly, "legal costs." Of course it would have made our task easier if Congress had used the term "attorneys' fees" in its amendment to section 101(25). But Congress is not confined to a particular linguistic formula; it need only manifest its clear intention to permit the litigant to recover fees. As the Eighth Circuit convincingly demonstrated, Congress has done so in the 1986 amendments to CERCLA.

The majority invokes the "American rule" upheld in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), and *Runyon v. McCrary,* 427 U.S. 160, 182–86, 96 S.Ct. 2586, 2600–02, 49 L.Ed.2d 415 (1976), but that is a rule requiring each party to bear its own attorneys' fees when Congress has not otherwise declared its intent. In *Alyeska,* the statute in issue said nothing remotely touching upon fees; the Court rejected the proposition that fee awards should follow from the fact that Congress had authorized private lawsuits. *Alyeska,* 421 U.S. at 263, 95 S.Ct. at 1624. In *Runyon,* the governing statute merely authorized the federal courts to apply the common law when federal law failed "to furnish suitable remedies." *Runyon,* 427 U.S. at 184, 96 S.Ct. at 2601. *Alyeska* and *Runyon* provide the rule when Congress has not indicated an intent; those two cases should not be construed to create a presumption against the award of fees that Congress can only overcome by the use of particular language.

I would give the natural contextual meaning to "costs" of "enforcement activities" and hold that those terms authorize the recovery of Stanton Road's attorneys' fees. In so doing, I would avoid the frustration of Congress's purpose of stimulating private cleanup efforts, and would also avoid an unnecessary conflict between circuits.

*Escrow Fund*

I find in the record no hint that the defendants objected to the creation of an escrow fund from which disbursements would be made as future cleanup costs were incurred. Indeed, the statements of both sides in district court indicated that they contemplated the establishment of some such fund. I would not now entertain an objection raised by defendants that was not presented to the district court.

It is true, as the majority opinion states, that we may consider issues raised for the first time on appeal "if the issue is one of law *and the pertinent record has been fully developed." United States v. Gabriel,* 625 F.2d 830, 832 (9th Cir.1980) (emphasis added). In my view, the record in this case is anything but fully developed on the question of the propriety of an escrow fund to cover future cleanup costs. Because the parties did not dispute the issue, there is no evidence regarding alternatives to such a fund, or the necessity for it in this case, or the alternative methods of ensuring that disbursements will be for necessary expenses only and will be "consistent with the national contingency plan" as required by section 107(a)(4)(B).

The majority has ruled that the district court erred in setting up the escrow fund because that required the defendants to pay damages for cleanup costs that Stanton Road had not yet incurred. But the disbursements were not to be made from the escrow fund until after the costs had been incurred. The majority apparently concludes nonetheless that such an arrangement runs afoul of our holding in *Dant & Russell v. Burlington N. R.R. Co.,* 951 F.2d 246 (9th Cir.1991), that plaintiffs

must "actually incur response costs before they can recover them." *Id.* at 250. But *Dant & Russell* involved a flat award for future response costs. In holding that costs could not be recovered before they were incurred, we said:

> This case provides no occasion for defining what "incurred" means—only what it does not mean. Here, we are presented with nothing but bare assertions by BN that BN will perform future cleanup. These assertions do not amount to response costs "incurred" under § 9607(a)(4)(B).

*Id.* Here the escrow arrangement was based on far more than mere assertions of intended cleanup. The arrangement may be sufficiently concrete to satisfy the definition of costs "incurred." If it is not, the fault is with the defendants. Had they raised an objection to the escrow arrangement in district court, the escrow conditions could have been modified to require the kind of commitment to cleanup that might well be deemed to render the costs "incurred."

CERCLA is relatively new legislation, and our experience with it is still unfolding. Escrow arrangements to cover cleanup costs may prove to be a useful device in effectuating Congress's purposes, particularly when there is a question concerning the continued solvency of the liable polluter. I would not hastily rule out the use of such a tool unless I were convinced that the statute forbade it. I can reach no such conclusion on this scanty record. The issue, I submit, should have been left for a later day, when the parties have properly framed it. Here it has been waived; I would affirm the district court.