UNITED STATES of America

v.

WITCO CORPORATION.

Civ. A. No. 94–0662.

United States District Court,
E.D. Pennsylvania.

May 4, 1994.

Jonathan A. Marks, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, for plaintiff.

Charles F. Lettow, Michael R. Lazerwitz, and Christopher G. Smith, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for defendant.

*MEMORANDUM AND ORDER*

JOYNER, District Judge.

This civil action, which was instituted by the United States government under Sections 107 and 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(b), has been brought before this Court by motion of the defendant Witco Corporation to dismiss the complaint against it pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons delineated in the paragraphs which follow, the motion is denied.

## I. *STATEMENT OF RELEVANT FACTS.*

This case, which was originally filed in the United States District Court for the District of New Jersey and transferred to this forum on February 2, 1994, has its origins in a contaminated four-acre parcel of real estate located in Franklin Township, Hunterdon County, New Jersey, known as the Myers Property Superfund Site. From approximately 1927 through 1959, this parcel of property (hereinafter the "site") had been used for the manufacture of pesticides and numerous other chemicals by various corporate owners and/or operators.[1]

In 1979, the New Jersey Department of Environmental Protection and Energy ("NJDPE") identified the presence of numerous hazardous substances at the site and in 1983, the United States Environmental Protection Agency ("EPA") placed the site on the National Priorities List ("NPL") pursuant to § 105(a)(8)(B) of CERCLA. In 1985, EPA notified Elf Atochem North America, Inc. that it considered it a potentially responsible party ("PRP") for costs incurred by EPA in connection with remediation and clean-up of the site. A Remedial Investigation/Feasibility Study ("RI/FS") of a portion of the site completed in 1990 resulted in soil findings of a variety of chlorinated pesticides, volatile and semivolatile organic compounds, polycyclic aromatic hydrocarbons, dioxins and dibenzofurans and such inorganic compounds as arsenic, copper, silica, antimony, zinc and lead, all of which are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14). Similar compounds were found in groundwater samples taken from the site.

Based on the information collected from the site during the RI/FS, the EPA selected a remedy to address the hazardous substances found at the site, which remedy was issued by the EPA in a Record of Decision on September 28, 1990. Thereafter, on February 26, 1992, the United States entered into a Consent Decree with Elf Atochem in the U.S. District Court for the District of New Jersey[2]. Under that decree, Elf Atochem agreed to perform and pay for the Remedial Design/Remedial Action ("RD/RA") plan and agreed to reimburse EPA some $2,700,000 in costs already incurred and to be incurred in the future with respect to the site. The performance of the RD/RA is expected to cost Atochem some $47 million.

---

1. Specifically, between 1945 and 1947, a portion of the site was owned and operated by the Pennsylvania Salt Manufacturing Co. (PSMC) for the primary purpose of manufacturing p,p' dichloro-diphenyl-trichloroethane, more commonly known as DDT. From approximately 1953 through 1959, the site was leased by Clinton Chemical Corporation for the production of anhydrous aluminum chloride, dried copper sulfate and dried magnesium sulfate. Clinton Chemical Corporation changed its name to Pearsall Chemi-

cal Corporation in 1961 and was merged into Witco Corporation in 1980. PSMC subsequently came to be known as the Pennwalt Corporation which, in turn, is a predecessor corporation to Elf–Atochem North America, Inc.

2. The Judicial Consent Decree was entered with respect to the case of *United States v. Atochem North America, Inc.,* Civil Action No. 91–5533.

Notwithstanding its settlement with Atochem, the United States brought this suit against Witco to recover all of the other unreimbursed response costs which it has incurred and may in the future incur with respect to the response actions related to the Myers property site and for a declaratory judgment that Witco is liable for all response costs not otherwise provided for under the Atochem settlement. Insofar as there is presently pending in this Court an action for contribution by Elf Atochem against Witco, this case was transferred here. Witco Corporation now moves for dismissal pursuant to Rule 12(b)(6) for the reasons that the U.S. has complete relief from Elf Atochem for the site's cleanup costs and because, as a matter of law, the government cannot recover future costs incurred in overseeing Atochem's remediation actions.

## II. DISCUSSION.

 The law is clear that in considering a motion to dismiss for failure to state a claim upon which relief may be granted, the courts must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990). In ruling upon such a motion, the Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3rd Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3rd Cir.1988).

In response to widespread concern over the improper disposal of hazardous wastes, Congress enacted CERCLA in 1980 and the Superfund Amendments and Reauthorization Act (SARA) in 1986 to facilitate the prompt clean-up of hazardous waste sites. *Matter of Bell Petroleum Services, Inc.,* 3 F.3d 889, 894 (5th Cir.1993); *U.S. v. Alcan Aluminum Corp.,* 964 F.2d 252, 257–258 (3rd Cir.1992). CERCLA's primary purpose is remedial: to clean up hazardous waste sites. *Polcha v. AT & T Nassau Metals Corp.,* 837 F.Supp. 94, 96 (M.D.Pa.1993). Because it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals: (1) enabling the EPA to respond efficiently and expeditiously to toxic spills, and (2) holding those parties responsible for the releases liable for the costs of the cleanup. In that way, Congress envisioned the EPA's costs would be recouped, the Superfund preserved, and the taxpayers not required to shoulder the financial burden of nationwide cleanup. *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192 (2nd Cir.1992) citing, *inter alia, United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373, 1377 (8th Cir.1989); *City of New York v. Exxon Corp.,* 744 F.Supp. 474, 485 (S.D.N.Y.1990). CERCLA is thus a strict liability statute to which the concepts of joint and several liability may be applied in appropriate cases. *See: Matter of Bell Petroleum, supra,* at 897; *United States v. Chem–Dyne Corp.,* 572 F.Supp. 802, 809 (S.D.Ohio 1983).

 Specifically, 42 U.S.C. § 9604 authorizes the President to respond to a release or substantial threat of a release of hazardous substances into the environment by: (1) removing or arranging for the removal of hazardous substances; (2) providing for remedial action relating to such hazardous substances; and (3) taking any other response measure consistent with the National Contingency Plan that the President deems necessary to protect the public health or welfare or the environment. The President, in turn, has delegated most of his authority under CERCLA to the EPA. *U.S. v. Alcan Aluminum Corp., supra,* at 258. To make out a *prima facie* cause of action under CERCLA, a plaintiff must establish that: (1) the defendant fits one of the four classes of responsible parties outlined in § 9607(a)[3]; (2) the

---

**3.** The categories of "responsible parties" include:

(1) the owner and operator of a vessel or a facility,

site is a facility[4]; (3) there is a release or threatened release of hazardous substances at the facility[5]; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response[6] actions conform to the National Contingency Plan set up under the Act and administered by the EPA in order to prioritize hazardous substance release sites throughout the nation. *B.F. Goodrich*, at 1198.

■ Section 107 of CERCLA, 42 U.S.C. § 9607(a)(4), provides for the recovery of response costs from all persons responsible for the release of a hazardous substance. Response actions include both "removal," or immediate or interim responses, and "remedial" actions, which are generally said to be permanent responses. *Matter of Bell Petroleum Services, Inc., supra*, at 894. Thus, while liability under CERCLA has been said to encompass all "necessary costs of response," including expenses for investigating, testing, sampling and monitoring environmental contamination and purchases of equipment to monitor and evaluate contamination, future response costs, to the extent that they are speculative and have not actually been incurred, are not recoverable. *See: Stanton Road Associates v. Lohrey Enterprises*, 984 F.2d 1015, 1021 (9th Cir.1993). *Hatco Corp. v. W.R. Grace & Co.-Conn.*, 836 F.Supp. 1049, 1089 (D.N.J.1993). The only exception to this general rule of non-recoverability of future costs, exists by virtue of § 9613(g)(2) which provides for the filing of declaratory judgment actions to establish liability for future response costs. *Stanton*, at 1021.

In this case, the defendant Witco likewise raises the question of whether certain costs are recoverable "response costs" under CERCLA, by arguing that under the authority of the recently-decided *U.S. v. Rohm and Haas Co.*, 2 F.3d 1265 (3rd Cir.1993), the government in this case is precluded from recovering the costs and expenses which it incurs as the result of its oversight of the clean-up and remediation of the Myers Property site by Elf Atochem North America. After careful examination and consideration of the Third Circuit's holding in that case, we are constrained to agree with the defendant that such oversight costs are not recoverable.

Specifically, in *Rohm and Haas*, the defendant chemical company entered into an Administrative Consent order with the United States under which it agreed to perform various cleanup related activities on all portions of a 120–acre site located next to the Delaware River in Bristol Township, Pennsylvania, including those portions which were then owned by the Bristol Township Authority and Chemical Properties, Inc. In November, 1990, the United States brought suit pursuant to CERCLA § 107 attempting to recover from the defendant all costs incurred by the government in connection with the site since 1979, and seeking declaratory judg-

---

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person, by any other party or entity at a facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ...

42 U.S.C. § 9607(a).

4. The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline ..., well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel. 42 U.S.C. § 9601(9).

5. A "release" is broadly defined as any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment ..." 42 U.S.C. § 9601(22).

6. The terms "respond" or "response" means remove, removal, remedy, and remedial action, all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto. 42 U.S.C. § 9601(25).

ment declaring recoverable all future costs incurred at the site. The district court found in favor of the government against all of the defendants holding that all elements of CERCLA liability were met and that none of the defenses offered were applicable,[7] and issued an order holding defendants liable for $401,348.78 and for all costs properly incurred under CERCLA thereafter.

On appeal, the defendants took the position that under the authority of *National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 342, 94 S.Ct. 1146, 1149-50, 39 L.Ed.2d 370 (1974) and *Skinner v. Mid–America Pipeline Co.*, 490 U.S. 212, 224, 109 S.Ct. 1726, 1734, 104 L.Ed.2d 250 (1989), oversight costs could not be recovered by the government under CERCLA because there existed no clear congressional intent as reflected in the language of that statute that such costs would be recoverable thereunder. After formulating the threshold issue before it as being whether the government's oversight of a cleanup paid for and conducted by private parties constitutes a government removal within the meaning of the relevant acts (RCRA and CERCLA) and reviewing in detail CERCLA §§ 104, 106, 107 and 111, the Third Circuit agreed with the defendants' contention. In noting that "response costs" consist of both "removal and "remedial" costs under the Act, the Court went on to elucidate what it perceived to be the statutory distinction between recoverable and non-recoverable costs:

> "Where the government takes direct action to investigate, evaluate, or monitor a release, threat of release, or a danger posed by such a problem, the activity is a 'removal' and its costs are recoverable.... This includes the costs, no matter at what stage incurred, of ascertaining whether and to what extent the risk has been reduced or eliminated by the chosen response. Similarly, if the activity is intended to enable EPA to formulate a position on what would be the most appropriate response action at a given facility, the cost is recoverable. Thus, as we have seen, the costs of conducting an RI/FS are recovera-

ble.... In addition, although the cost of overseeing an RI/FS is not a 'removal cost,' that cost is also recoverable in accordance with the congressional intent reflected in § 104(a). ....Even at the execution stage, the costs of activity associated with directing government removal and remedial action are recoverable ...

On the other hand, if what the government is monitoring is not the release or hazard itself, but rather the performance of a private party, the costs involved are non-recoverable oversight costs. Costs of this type would include the costs of contractors hired by EPA to review the plans and work of a private party or its agents executing a response action. Because orders under CERCLA § 106 or RCRA § 3008(h) generally involve private removal and remedial activity rather than government removal and remedial activity, costs incurred by the government in connection with administering such orders normally will not be recoverable removal costs.

2 F.3d at 1278–1279 (citations omitted).

Instantly, the United States suggests that *Rohm and Haas* is not binding on this court because it dealt with a *removal* action rather than a *remediation* action such as is involved in this case. Inasmuch as the statutory definition and language concerning remedial actions is very similar to and evinces no clearer congressional intent than does that concerning removal actions, we find that insufficient distinction exists such as would justify a decision to disregard the reasoning of the Third Circuit in *Rohm and Haas*. Accordingly, we conclude that that decision must be followed in the action now before us.

■ This conclusion notwithstanding however, our review of the government's complaint in this matter likewise convinces us that we cannot dismiss this action in its entirety at the present time. To be sure, the plaintiff has pled all of the elements necessary to state, *prima facie*, a claim for relief under CERCLA. In addition, in its prayer for relief, the United States seeks the entry of a judgment against the defendant for all

---

7. The other defendants in the action consisted of Chemical Properties, Inc. and the Bristol Township Authority. As to the defenses raised in the district court action, see *U.S. v. Rohm and Haas Co.*, 790 F.Supp. 1255 (E.D.Pa.1992).

"unreimbursed response costs" incurred by it for response actions related to the Myers Property site and a declaratory judgment in its favor that the defendant is liable for all response costs not otherwise provided for pursuant to the Atochem settlement which may be incurred by the United States in the future at the site. Viewing the complaint (and the definitions contained in the Atochem consent decree which "include but are not limited to" direct and indirect costs incurred by the government in overseeing the work described therein) in the light most favorable to the plaintiff, we are unable to conclusively find that the only remedy sought by the government's complaint is the recovery of oversight costs, that it has already received a complete recovery from Elf Atochem, or that it cannot recover anything further from Witco in this action. Thus, to the extent that the complaint seeks to recover as response costs those expenses which it has and will incur in overseeing the clean-up of the Myers Property site, we agree with the defendant that those costs are not recoverable as a matter of law. In all other respects, the motion to dismiss must be denied at the present time. Naturally, in the event that subsequent discovery reveals that the only costs to be recovered by the government in this action are its oversight expenses, the defendant is free to move for summary judgment.