**KAUFMAN AND BROAD–SOUTH BAY, Plaintiff,**

v.

**UNISYS CORPORATION, et al., Defendants.**

**No. C–92–20677 RMW (EAI).**

United States District Court, N.D. California.

May 7, 1993.

1470

Craig S. Ritchey, Jean K. McCown, Terrence H. Cross, Blase, Valentine & Klein, Michael C. Donovan, J. Martin Robertson, Louis B. Green, Ware & Freidenrich, Palo Alto, CA, for plaintiff.

Robert A. Van Nest, Susan J. Harriman, Jennifer G. Redmond, Keker, Brockett & Van Nest, San Francisco, CA, for defendants Armand Kunde, individually and as Trustee of the John W. Doudell Trust, Joan Kunde, Doudell Trucking Co., and Diamond Tank and Transp. Lines, Inc.

Martin H. Kresse, Christian Volz, Edward P. Sangster, Alison E. Spong, McKenna & Cuneo, San Francisco, CA, for defendant Unisys Corp.

ORDER DENYING MOTION TO DISMISS PART OF COUNT 2 AND GRANTING REMAINDER OF DEFENDANTS' MOTIONS TO DISMISS

WHYTE, District Judge.

## I. *INTRODUCTION*

The motions of defendants to dismiss all or portions of plaintiff's complaint came on regularly for hearing on March 19, 1993. The court has read the moving and responding papers and heard the oral argument of all counsel. Good cause appearing therefor, the court denies defendant Unisys's motion to dismiss count two as to injunctive relief; grants the remainder of defendants' motions to dismiss; and grants plaintiff leave to amend its complaint as to the Kundes and as to count seven.

Plaintiff Kaufman and Broad–South Bay ("K & B") commenced this action on October 22, 1992. K & B named as defendants Unisys Corporation ("Unisys"); Armand Kunde, Joan Kunde, and Armand Kunde as trustee of the John Doudell Trust created December 30, 1971 (collectively, "the Kundes"); Doudell Trucking Company ("Doudell"), Diamond Tank and Transportation Lines, Inc. ("Diamond"); and Does 1 through 100. The complaint alleges that significant amounts of toxic waste had been dumped on a piece of property K & B had purchased from the Kundes. K & B filed suit to recoup its cleanup costs from the Kundes, from Doudell and Diamond (two trucking companies that allegedly delivered the waste), and from Unisys as successor in interest to Memorex Corporation (the alleged originator of the waste).

Unisys has moved to dismiss counts two and seven of K & B's complaint, and the

portion of count one that seeks attorneys fees. The Kundes have moved to dismiss the complaint in its entirety, or in the alternative, to dismiss count seven and the same part of count one. Doudell and Diamond have also moved to dismiss count seven and the part of count one calling for attorneys fees.

## II. *FACTUAL BACKGROUND*

K & B is a real estate development company. In December 1987, K & B acquired an option to purchase approximately one hundred acres of real property in Milpitas, California from the Kundes. The property was to be developed into housing sites. K & B alleges that the purchase price reflected the property's fair market value if it were free from environmental contaminants. K & B further alleges that the sellers made no disclosures at that time about possible toxic waste buried on the property.

In October and November 1988, during the option period, K & B alleges that it discovered hundreds of barrels containing significant quantities of methyl ethyl ketone, cyclohexanone and ethylbenzene, all toxic substances. Some of the barrels had broken and the contaminants had leaked into the soil. K & B alleges that this toxic dump posed a significant threat to the environment and to the health of persons in the area. As K & B investigated further and began cleanup operations in 1988 and 1989, it discovered more waste and soil contamination.

K & B learned that the Doudell and Diamond trucking firms had buried toxic waste on the property from 1969 to 1974, and that some or all of the Kundes had owned the property during that time. The alleged source of the toxics was a manufacturing plant run by Memorex Corporation. The property was apparently not designated for disposal of the type of waste that the firms deposited there.

In 1976, the California Regional Water Quality Control Board, San Francisco Bay Region ("the Regional Board") issued Abatement Order No. 76–010, ordering the trucking firms to clean up 500 to 600 drums of toxic waste. On June 26, 1978, the Regional Board rescinded its 1976 order, allegedly because the two firms represented that they had complied with all provisions of the order and that the property was clean. K & B alleges that the firms had actually removed only some of the waste, if any. K & B's own cleanup efforts had allegedly resulted in the removal of approximately 625 drums of waste by early 1990, along with approximately 113,-500 cubic yards of contaminated soil.

While K & B was investigating the contamination, the City of Milpitas delayed its approval of K & B's development plans. K & B therefore sought an extension of the option period from the Kundes. This was granted, allegedly for consideration of two million dollars. The Kundes and K & B signed a second addendum to their option agreement on February 13, 1989. This document included a broad release of all claims K & B might have against the Kundes, including claims for environmental cleanup of discovered and undiscovered contaminants. The release contained a recital to the effect that, just before the scheduled closing date, K & B had accused the Kundes of intentionally concealing the nature and extent of the contamination at the site. In the same vein, K & B's complaint alleges that, at the time the extension was negotiated and the release was signed, the Kundes had fraudulently failed to disclose the full extent of the contamination.

K & B exercised its options and purchased portions of the property in December 1988 and January 1990. K & B asserts that it closed escrow in 1988 and signed the release in 1989 in order to protect the expenditures it had already made to investigate and clean up the contamination. At the time K & B filed its complaint, its expenditures for the cleanup allegedly exceeded twenty-six million dollars.

In 1989, the Regional Board issued Abatement Order No. 89–163 to K & B and Armand Kunde, requiring investigation and cleanup of the property, and protection of water under and around the property. The order specifically found that K & B was not responsible for the disposal of chemicals on the property. K & B continues to perform quarterly monitoring and testing of the property, pursuant to the 1989 order.

K & B has since developed and sold part of the property for residential use, and has also

## 1472

sold an undeveloped portion. K & B retains ownership of part of the property.

### III. *DISCUSSION*

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the facts alleged in plaintiff's complaint as true, and must construe those facts in the light most favorable to the plaintiff. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989); *U.S. v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). The court may dismiss a claim only on a dispositive issue of law, and only if the plaintiff cannot prove any set of facts to support its claim. *Neitzke,* 490 U.S. at 326–27, 109 S.Ct. at 1832–33; *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Generally, a motion to dismiss for failure to state a claim is regarded with disfavor and is rarely granted without leave to amend. *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir.1987), *cert. denied,* 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988).

### A. KUNDES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY

The Kundes assert that K & B is legally unable to state any cause of action against them because of a release that both parties executed on February 13, 1989. They have attached to their moving papers a copy of a document entitled Second Addendum to Option Agreement, which contains the release agreement.[1]

#### 1. Incorporation of Release into K & B's Complaint

■ Under Fed.R.Civ.P. 12(b), if material outside the complaint is presented to the court and is not excluded from consideration, the court must normally convert a 12(b)(6) motion to dismiss into a motion for summary judgment. *Clipper Exxpress v. Rocky*

*Mountain Motor Tariff,* 690 F.2d 1240, 1250 n. 14 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); *Townsend v. Columbia Operations,* 667 F.2d 844, 849 (9th Cir.1982). K & B's complaint briefly discusses the release. Complaint at ¶ 36. In their reply memorandum, the Kundes argue that, under Fed.R.Civ.P. 10(c), the complaint has incorporated the release by reference. If the plaintiff fails to attach a pertinent document to its complaint, the defendant may introduce the document as part of a motion attacking the complaint. *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991); 5 Wright & Miller § 1327 at 761–62. A document incorporated by reference is not external to the complaint, even if it is actually introduced by the defendant. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) (plaintiff had actual knowledge of documents and relied on them in framing complaint), *cert. denied sub nom. Cortec Indus., Inc. v. Westinghouse Credit Corp.,* — U.S. —, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Townsend v. Columbia Operations,* 667 F.2d 844, 848–49 (9th Cir.1982) (complaint fully described documents and referred to them extensively as a basis for claims; documents' authenticity not questioned); *Merrell v. All Seasons Resorts, Inc.,* 720 F.Supp. 815, 817 (C.D.Cal.1989).

■ Since K & B's complaint incorporates the release by reference, the court may consider the release without converting the motion to dismiss into one for summary judgment. *See Cortec,* 949 F.2d at 48; *Romani,* 929 F.2d at 879 n. 3; 5 Wright & Miller § 1327 at 761–63.

#### 2. California Law Controls Interpretation of Release [2]

In *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1458–59 (9th Cir.1986), the Ninth Circuit held that a contract releasing CERCLA[3] liability should be construed un-

---

1. Although K & B objects to the court's consideration of the release in this motion to dismiss, it indicated at oral argument that it did not contest the authenticity of the document attached to the Kunde defendants' papers.

2. K & B's counsel filed a supplemental memorandum of points and authorities on this issue a few days after the matter was submitted follow-

ing oral argument. They did not obtain leave of the court to do so. The court has nevertheless read these papers but they have not affected the court's decision on these motions.

3. Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and

der state law. The fact pattern of *Mardan* is similar to the case at bar. In *Mardan*, the parties entered into a release and settlement agreement pursuant to the sale of property, under which each party released the other from all causes of action related to the purchase agreement and sale. The release apparently did not mention the environmental contamination that was present on the property. Prior to the sale, however, defendant seller filed a Notification of Hazardous Waste Activity with the Environmental Protection Agency ("EPA"). Plaintiff buyer subsequently remediated the contamination, pursuant to an action brought by the EPA. Plaintiff then sued defendant under CERCLA sections 9607 and 9613 to recover part of its response costs.[4] Defendant argued on a motion for summary judgment that the release, as construed under state law, indemnified it from plaintiff's suit.

The court found no Congressional mandate to develop uniform federal law regarding private parties' ability to settle CERCLA liability disputes between themselves, and so deferred to state law to construe the release. *Id.* at 1458–59 (citing *amicus curiae* brief filed by the U.S. government). Specifically, "the application of state law to interpret such releases will not frustrate the objectives of CERCLA." *Id.* at 1459. Such releases "are essentially tangential to the enforcement of CERCLA's liability provisions.... [They] cannot alter or excuse the underlying liability, but can only change who ultimately pays that liability." *Id.*

Courts have repeatedly held that, despite the restrictive language of subsections 9607(b) regarding limited defenses to suits under subsection (a), equitable defenses may be asserted in CERCLA actions, especially defenses such as release or indemnification. *See, e.g., Niecko,* 973 F.2d at 1296; *Jones–Hamilton,* 973 F.2d at 692; *Mardan,* 804

F.2d at 1459–60; *Village of Fox River,* 806 F.Supp. at 790–92; *Purolator,* 772 F.Supp. at 129–30. Indeed, subsection (e) allows agreements to insure, to hold harmless, and to indemnify a party liable under subsection (a). *See Jones–Hamilton,* 973 F.2d at 692. The same logic applies to section 9603's refusal to limit liability for polluters who fail to provide the notice of contamination to the EPA Administrator.

■ To summarize, private parties can enter into agreements between themselves to apportion responsibility as to each other for costs incurred under CERCLA. They cannot, however, alter their underlying liability to the government to remediate contamination. *Id. See also Niecko,* 973 F.2d at 1296; *Jones–Hamilton,* 973 F.2d at 692; *Village of Fox River,* 806 F.Supp. at 790–92; *Purolator,* 772 F.Supp. at 129–30.

The *Mardan* court ruled to protect commercial, contractual certainty and to encourage settlements, if such settlements would not undermine the purposes of CERCLA. The court commented, "since CERCLA releases are likely to be entered into by major companies, there is little need for a special federal rule to protect releasers of CERCLA recovery rights from their own ignorance or weak bargaining power." *Mardan,* 804 F.2d at 1460. Finally, the court held that "[c]reating a federal rule to govern CERCLA releases would introduce confusion and uncertainty into ... commercial relationships" which would discourage settlement of CERCLA liability issues and undermine state contract law. *Id.* The Kundes, therefore, have the right to rely on the application of settled, state law tenets of commercial contract law to construe the release.

■■ The court must look to California law to determine the validity of the instant

---

Reauthorization Act of 1986 ("SARA"), 42 U.S.C. §§ 9601–9675.

K & B maintained at oral argument that *Mardan* had been preempted by CERCLA section 9613(f), regarding contribution actions, which was amended by SARA in 1986. However, cases decided since SARA have continued to cite *Mardan* as good precedent. *See, e.g., Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1301 (6th Cir.1992) (construing state environmental statute similar to CERCLA § 6907(e)); *Jones–Hamilton Co. v. Beazer Materials & Servs.,* 973 F.2d 688, 692 (9th Cir.1992); *Village of Fox River Grove, Ill. v. Grayhill, Inc.,* 806 F.Supp. 785, 790–91 (N.D.Ill. 1992); *Purolator Prods. Corp. v. Allied–Signal, Inc.,* 772 F.Supp. 124, 129–32 (W.D.N.Y.1991).

4. Section 6907(a) provides for the filing of private actions to recover response costs from parties responsible for environmental pollution; section 6913(f) provides for contribution by responsible parties to the party who actually paid for remediation.

release. In California, a party may seek to invalidate a release if the party was induced to enter the release by fraud or economic duress. *IMO Development Corp. v. Dow Corning Corp.*, 135 Cal.App.3d 451, 458, 185 Cal.Rptr. 341 (1982). These two grounds for rescission are considered separately below.

### 3. Fraud

 K & B alleges that it was the victim of fraud in that the Kundes never disclosed the extent of the contamination on the site and they failed to remedy the contamination pursuant to the first Abatement Order. However, K & B has not alleged facts that demonstrate that it relied on any misrepresentations by the Kundes when it entered into the release.

*Brae Transportation, Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986), provides a guide to interpreting contracts under California law. *See also Winet v. Price*, 4 Cal.App. 4th 1159, 1165–68, 6 Cal. Rptr.2d 554 (1992). First, *Brae* directs the court to read the plain meaning of the words of a contract to determine the objective intent expressed. The court may consider the nature and purpose of the contract, the circumstances under which it was made, and the parties' conduct after they signed the contract but before a dispute arose. Only if the language is ambiguous or purposefully fails to express the parties' intent should the court look beyond the contract itself.

 California Civil Code section 1542 provides that a general release does not extend to unknown or unsuspected claims. The parties to a release may be bound by a waiver of the section's protection if they understand and consciously agree to the waiver. *Winet v. Price*, 4 Cal.App. 4th at 1170, 6 Cal.Rptr.2d 554. However, if the parties have not dealt at arms' length and the releasor has relied on fraudulent statements or misrepresentations by the releasee, then the release is binding only to the extent actually intended by the releasor. *Frusetta v. Hauben*, 217 Cal.App.3d 551, 557, 266 Cal.Rptr. 62 (1990). In order to void the release, the releasor must show that its entry into the release was induced by fraud, undue influence, mistake or deceit. *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1455 (9th Cir.1988)

(construing Guamanian statute identical to Cal.Civ.Code § 1542).

The release agreement between K & B and the Kundes is unambiguous and clear. The parties released each other "from any and all ... [past, present and future] causes of action and affirmative defenses of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected" arising out of the sale of the site, "including but not limited to the claims referenced in Recital D above (the 'Released Matters')." Release at 7. Recital D states, "[i]mmediately prior to the scheduled closing date, Optionee asserted that Optioners had ... intentionally concealed or negligently failed to disclose the nature and extent of the contamination on the Optioned Lands...." Release at 2.

The release recites California Civil Code section 1542 and then declares that the parties waive all protection under the section "or any similar provision of the statutory or nonstatutory law of any other jurisdiction." Release at 8. The parties' intention was "to fully, finally and forever settle and release all of the Released Matters.... In furtherance of this intention, the releases herein given shall be and remain in effect as full and complete mutual releases notwithstanding the discovery or existence of any additional or different claims or facts. Release at 8.

The release is unambiguous and unequivocal. K & B expressly released the Kundes from liability for known and unknown claims, knowingly waived the protection of Civil Code section 1542, and even acknowledged that it suspected fraud on the part of the Kundes. K & B had ample opportunity to discover the nature and extent of the contamination before entering into the release. It was already well into its investigation and remediation efforts at the time it signed the release (as the document itself indicates at page 2, and the complaint states at paragraph 37), and had already purchased part of the property. Less than one year later, it exercised its option to purchase the rest of the property. K & B has not alleged that it relied on any misrepresentations made by the Kundes or on their alleged failure to disclose the extent of the contamination when

it signed the release. There are no allegations that the parties to the release dealt at anything other than arms' length.

### 4. Economic Duress

■ K & B may invalidate the release on the basis of economic duress only if it had no reasonable alternative but to succumb to a wrongful act of pressure by the Kundes. *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir.1987); *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal.App.3d 1154, 1158–59, 204 Cal.Rptr. 86 (1984). Hard bargaining alone does not constitute economic duress. *Sheehan*, 812 F.2d at 469. The Ninth Circuit in *Sheehan* refused to invalidate a settlement agreement even though one party exploited the other's impecunious condition: "While we recognize the court's role in protecting persons from economic exploitation, we also note the importance of the notion of freedom of contract and the desirability of finality of private dispute resolutions." *Id.*

The court agrees with the Ninth Circuit that freedom of contract and finality of dispute resolution are paramount values. *Id.* K & B has not pled facts sufficient to show that it was under economic duress at the time it entered into the release with the Kundes. In fact, in the release agreement K & B represents that "it now has and at all times material to this Addendum, shall maintain adequate financial resources to perform its obligations as set forth" in the document. Release at 9.

### 5. Conclusion

For the foregoing reasons, the court grants the motion to dismiss plaintiff's complaint as to the Kundes. Plaintiff is granted leave to amend to specify facts showing that it was induced to enter into the release because of fraud or was forced to do so because of economic duress.

### B. UNISYS'S MOTION TO DISMISS COUNT TWO (FOR INJUNCTIVE RELIEF AND RESTITUTION OF COSTS PURSUANT TO RCRA)

Defendant Unisys has moved to dismiss count two of K & B's complaint. The count seeks restitution and litigation costs from Unisys, and an injunction ordering Unisys to undertake all ongoing testing and monitoring required by the Regional Board's 1989 order. Count two is brought under RCRA[5] section 6972(a)(1)(B), which provides for a citizen suit

> against any person, ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

> The district court shall have the jurisdiction ... to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both....

The section also provides for civil penalties and for litigation costs.

Unisys alleges that subsection 6972(a)(1)(B), like subsection 6972(a)(1)(A), should be applied to continuing or prospective polluters. However, subsection 6972(a)(1)(B) deals with past *or* current violations of RCRA that have created current and continuing endangerment to the environment. *See, e.g., Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 57 n. 2, 108 S.Ct. 376, 380 n. 2, 98 L.Ed.2d 306 (1987); *Tanglewood East Homeowners v. Charles–Thomas, Inc.*, 849 F.2d 1568, 1575–76 (5th Cir.1988); *Acme Printing Ink Co. v. Mendard, Inc.*, 812 F.Supp. 1498, 1527 (E.D.Wis. 1992).

#### 1. *Injunctive Relief*

■ Unisys maintains that K & B cannot recover under section 6972(a)(1)(B) because K & B has cleaned up the site and no immi-

---

**5.** Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992.

nent and substantial endangerment now exists.

K & B has alleged that it "continues to perform certain quarterly designated environmental monitoring and reporting activities ... to assess and avoid any potential endangerments to the public health, welfare or environment as a consequence of the release of hazardous substances at the Site," pursuant to the second Abatement Order. Complaint at ¶ 40. "Ongoing monitoring is necessary to assess and prevent any potential for future endangerment to the environment at and near the Site...." Complaint at ¶ 69. The contamination "created a situation that 'may present an imminent and substantial endangerment to the environment'...." Complaint at ¶ 69.[6]

K & B maintains that it is not necessary under section 6972(a)(1)(B) to demonstrate that an emergency situation exists presenting the threat of actual harm, merely potential harm. *Dague v. City of Burlington*, 935 F.2d 1343, 1356 (2d Cir.1991), *rev'd on other grounds*, — U.S. —, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

K & B cites several cases decided under RCRA section 6973(a), which authorizes suit by the EPA. That section contains identical language to section 6972(a)(1)(B): "... may present an imminent and substantial endangerment to health or the environment...." Congress intended that actions brought under section 6972(a)(1)(B) should be evaluated "pursuant to the standards of liability established under [section 6973]." H.R.Rep. No. 198, pt. I, 98th Cong., 2d Sess. 53 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5576, 5612. The court does not find that the two sections are comparable in all respects. However, cases construing section 6973(a) may shed light on the interpretation of identical language used in the citizen suit statute. *See U.S. v. Price*, 688 F.2d 204, 213 (3d Cir.1982) ("may present" is expansive language, intended to address "any risk posed by toxic wastes"; "[i]mminence refers 'to the nature of the threat rather than identification of the time when the endangerment initially arose'"), quoting H.R. Committee Print No.

96–IFC, 9th Cong., 1st Sess. at 32 (1979); *Environmental Defense Fund v. EPA*, 465 F.2d 528, 535 (D.C.Cir.1972) ("An 'imminent hazard' may be declared at any point in a chain of events which may ultimately result in harm to the public. It is not necessary that the final anticipated injury actually have occurred prior to a determination that an 'imminent hazard' exists."); *U.S. v. Ottati & Goss, Inc.*, 630 F.Supp. 1361, 1394 (D.N.H. 1985) ("Endangerment means a threatened or potential harm and does not require proof of actual harm.").

K & B has alleged that Unisys, as successor in interest to Memorex, was a generator of waste at the property, and that the waste presents an imminent and substantial endangerment to the environment and to health. Complaint at ¶¶ 1, 7–10, 27, 28, 33, 38, 44, 69. K & B also alleges that the Regional Board's remedial action plan requires ongoing monitoring to prevent potential endangerment. Complaint at ¶¶ 40, 69. According to *Dague* and the section 6973 cases, this is sufficient to state a cause of action for injunctive relief under RCRA section 6972(a)(1)(B). Therefore, the court denies Unisys's motion to dismiss K & B's claim for injunctive relief.

### 2. *Restitution*

■ Unisys argues that section 6972 provides no cause of action for restitution. This is a question of first impression in the Ninth Circuit; the only two reported decisions on the issue come from other circuits.

In *Walls v. Waste Resource Corp.*, 761 F.2d 311, 316 (6th Cir.1985), *rev'd in part on other grounds*, 823 F.2d 977 (6th Cir.1987), the court noted that neither RCRA section 6972(a) nor the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a), expressly provided for a private cause of action for economic, compensatory or punitive damages. The *Walls* court refused to imply a private remedy beyond the statute.

*Commerce Holding Co. v. Buckstone*, 749 F.Supp. 441 (E.D.N.Y.1990), is directly on point. In ruling on a motion to dismiss, the court determined that plaintiff was not enti-

---

**6.** Alone, this allegation is a mere legal conclusion, insufficient to withstand a motion to dismiss. *Western Mining Council v. Watt*, 643 F.2d

618, 624 (9th Cir.1981). Taken together with the allegation in paragraph 40, however, it constitutes a description of conditions at the site.

tled to reimbursement for environmental remediation, regardless of how the request was phrased:

> While injunctive relief is available under § 6972(a)(1)(B), the statute does not provide a private action for damages. Nor should one be implied. Even construing [plaintiff's] request for recovery of its "costs for remediation" to be for "equitable relief," as it urges, it cannot maintain its RCRA claim. If awarded this relief, [plaintiff] would be the direct beneficiary of the substantive relief. Thus, regardless of how the request is denominated, it does not comport with the statute's purpose of allowing private parties to bring suit if "genuinely acting as private attorneys general, rather than pursuing a private remedy."

*Id.* at 445, quoting *Environmental Defense Fund, Inc. v. Lamphier*, 714 F.2d 331, 337 (4th Cir.1983).[7]

K & B argues that the court should follow cases interpreting RCRA section 6973, which provides for suit by the EPA. Those cases have held that restitution is recoverable by the EPA. *See U.S. v. Price*, 688 F.2d 204 (3d Cir.1982); *U.S. v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373 (8th Cir.1989); *U.S. v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

Although the court is not bound by the decisions of the Sixth Circuit or the Eastern District of New York, these cases persuasively argue against implying a private remedy for damages or restitution. Therefore, the court grants defendant Unisys's motion to dismiss the part of count two of the complaint that seeks restitution under RCRA.

---

7. K & B argues that the quotation from *Lamphier* in *Commerce* implies that *Commerce*'s holding is based on an "old" version of the RCRA statute, before 1984 amendments (*Lamphier* was decided in 1983). However, the quoted passage in *Lamphier* refers only to the availability of injunctive relief, not to damages or restitution. Therefore, K & B's objection is not persuasive.

8. K & B argues that Stanton Road Associates has recently filed a petition for rehearing, and that the United States Supreme Court may soon examine this issue because of a split among the circuits. *See Stanton Road* (9th Cir.1993) (no

## C. DEFENDANTS' MOTIONS TO DISMISS PART OF COUNT ONE (FOR RECOVERY OF ATTORNEYS FEES AS RESPONSE COSTS PURSUANT TO CERCLA)

■ All defendants have moved to dismiss the portion of K & B's first cause of action that requests recovery of attorneys fees as response costs pursuant to CERCLA section 9607(a)(3)(B). They contend that K & B is legally prohibited from recovering attorneys fees under this section.

Under what has been termed "the American Rule," a prevailing party may not recover attorneys fees unless explicitly authorized to do so by statute. *Runyon v. McCrary*, 427 U.S. 160, 185, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). CERCLA section 9607(a) does not explicitly provide for recovery of attorneys fees as part of response costs. The Ninth Circuit has recently ruled that attorneys fees are not recoverable under this section. *Stanton Road Assocs. v. Lohrey Enters., Inc.*, 984 F.2d 1015 (9th Cir.1993), and *Key Tronic Corp. v. U.S.*, 984 F.2d 1025 (9th Cir.1993).[8]

In *Stanton Road*, the Ninth Circuit noted that section 9607 does not include attorneys fees as "necessary costs of response" or as "enforcement activities," although several other CERCLA provisions explicitly allow recovery of fees. 984 F.2d at 1020. Relying on *Runyon* and *Alyeska*, the court refused to imply that fees were recoverable under section 9607(a), and so overturned the trial court's award of fees under the statute. *Id.*

In *Key Tronic*, the Ninth Circuit broadened its holding in *Stanton Road*. The court

---

recovery); *Key Tronic* (9th Cir.1993) (no recovery); *contra General Elec. Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1421–22 (8th Cir.1990) (recovery allowed), *cert. denied*, —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991); *Chesapeake & Potomac Tel. Co. v. Peck Iron & Metal Co.*, 814 F.Supp. 1281 (E.D.Va. Feb. 3, 1993) (recovery allowed). Until such time as the Ninth Circuit or the Supreme Court issues a new opinion, however, this court will follow current Ninth Circuit precedent. If this precedent is reversed, K & B may amend its complaint at that time to include a claim for attorneys fees.

overturned an award for attorneys fees incurred in pursuing the section 9607(a) action, in investigating other parties who might be responsible for pollution at the site in question, and in negotiating and preparing a consent decree in the case. 984 F.2d at 1027–28. None of these fees were recoverable because Congress had not explicitly provided for recovery of attorneys fees under section 9607(a). *Id.* at 1027.

Under *Stanton Road* and *Key Tronic,* K & B is not entitled to recover attorneys fees under CERCLA section 9607(a). K & B can prove no set of facts that would allow it to avoid these controlling cases. Therefore, the court dismisses the portion of count one of K & B's complaint that requests relief in the form of attorneys fees.

## D. DEFENDANTS' MOTIONS TO DISMISS COUNT SEVEN (FOR ATTORNEYS FEES PURSUANT TO C.C.P. § 1021.5)

All defendants have moved to dismiss K & B's seventh cause of action for recovery of attorneys fees under California Code of Civil Procedure section 1021.5.

Section 1021.5 provides that a court may award attorneys fees to a successful party in a private attorney general action which (a) enforces an important right affecting the public interest, and (b) confers a significant benefit (pecuniary or nonpecuniary) upon the general public or a large class of persons, if (c) the necessity and cost to plaintiff in bringing its private enforcement action outweighs its stake in the action. *Woodland Hills Residents Ass'n v. City Council,* 23 Cal.3d 917, 934–35, 154 Cal.Rptr. 503, 593 P.2d 200 (1979); *Beach Colony II v. California Coastal Comm'n,* 166 Cal.App.3d 106, 110, 212 Cal.Rptr. 485 (1985).

Under the first two prongs of this analysis, a plaintiff may not recover fees under section 1021.5 if its suit is primarily motivated by its own pecuniary interests, even if an incidental public benefit derives from the suit. *See, e.g., Wallis v. Farmers Group, Inc.,* 220 Cal.App.3d 718, 741, 269 Cal.Rptr. 299 (1990) (insurance agents' suit on breach of contract); *Beach Colony II,* 166 Cal.App.3d at 114, 212 Cal.Rptr. 485 (devel-

oper's suit for unconstitutional taking of property); *Schwartz v. City of Rosemead,* 155 Cal.App.3d 547, 558–59, 202 Cal.Rptr. 400 (1984) (action by private landowner to enjoin cogeneration plant as a private nuisance).

In *Beach Colony II,* the court denied attorneys fees to a developer who reaped substantial personal economic benefits from his suit against the California Coastal Commission for an unconstitutional taking of property. *Beach Colony II,* 166 Cal.App.3d at 113, 212 Cal.Rptr. 485. The court's justification for its ruling is equally applicable to the Beach Colony developer and to K & B's decision to clean up the Milpitas site: "Development is Colony II's business and its decision to sell or develop will be based upon economic considerations. The public benefit from the lawsuit was wholly coincidental to Colony II's personal profit-making goals."

K & B has alleged that it purchased the Milpitas site in order to develop it for profit. Counsel acknowledged during oral argument that remediating the environmental damage to the site was a commercially reasonable action. According to the complaint, K & B's overwhelming motivation for the cleanup was to ensure its own profits, not to pursue any public benefit.

Under the third prong of section 1021.5, a court may award attorneys fees only "when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit places a burden on the plaintiff 'out of proportion to his individual stake in the matter.'" *County of Inyo v. City of Los Angeles,* 78 Cal.App.3d 82, 89, 144 Cal.Rptr. 71 (1978), quoting *Serrano v. Priest,* 20 Cal.3d 25, 45–46 n. 18, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977), and quoted in *Woodland Hills,* 23 Cal.3d at 934–35, 154 Cal.Rptr. 503, 593 P.2d 200. K & B alleges that its stake in this matter exceeds $26 million. Although this suit may prove costly for the parties, it is virtually unimaginable that K & B's attorneys fees will approach that figure. K & B has not alleged facts sufficient to demonstrate that the cost of pursuing this action is out of proportion to its individual stake.

K & B has failed to allege facts sufficient to support its plea for section 1021.5 attor-

neys fees. Accordingly, the court grants defendants' motion to dismiss count seven of K & B's complaint with leave to amend.

### IV. *CONCLUSION*

For the foregoing reasons, the court orders:

1. that the motion to dismiss K & B's entire complaint as to the Kundes is granted with leave to amend to specify facts showing that it entered into the release because of fraud or economic duress;

2. that Unisys's motion to dismiss count two of the complaint is denied as to the claim for injunctive relief and litigation costs, and granted as to the claim for restitution;

3. that defendants' motions to dismiss the part of count one that seeks relief in the form of attorneys fees is granted; and

4. that defendants' motions to dismiss count seven of the complaint is granted with leave to amend.

Plaintiff must file its amended complaint within twenty days of the date of this order.