Filed 4/20/21  Smith v. American Idol Productions CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| MICHAEL SIMEON SMITH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AMERICAN IDOL PRODUCTIONS, INC. et al.,<br><br>    Defendants and Respondents. | B301534<br><br>(Los Angeles County<br>Super. Ct. No. BC643000) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William D. Stewart, Judge.  Affirmed.

Owen, Patterson & Owen, Gregory J. Owen, Susan A. Owen, Tamiko B. Herron and Beau M. Goodrick for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Robert P. Wargo and Sharon S. Jeffrey for Defendants and Respondents.

_____

Michael Simeon Smith sued respondents American Idol Productions, Inc., Fox Broadcasting Company, LLC, Freemantle Media North America, Inc., Ana Montoya, and Jami Tanihana for negligence after he was injured while participating in the American Idol televised singing competition. The trial court granted summary judgment in favor of respondents on the ground Smith signed a contract agreeing to release and waive any known and unknown claims against respondents and assume the risk of harm. Smith contends on appeal the contract was unenforceable because the release and waiver provisions were unconscionable. He also contends the contract's release and waiver provisions do not apply to defend against respondents' gross negligence. We affirm the judgment.

## FACTS[1]

Smith was a contestant in the 14th season of American Idol. As part of the competition, Smith and other contestants were fitted for in-ear monitors on December 12, 2014. Tanihana provided audiological services to the approximately 24 remaining contestants, including making ear impressions to fit the in-ear monitors. She has been a licensed audiologist for approximately 30 years. Montoya, a licensed hearing aid dispenser with approximately 20 years of experience, assisted Tanihana with making the ear impressions that day. Tanihana had previously worked with Montoya and had known her for decades. She was comfortable with Montoya assisting her with the in-ear

---

[1] We agree with the trial court that the primary material facts—Smith's injury and the terms of the contract—are not in dispute. We thus decline to address respondents' accusation that Smith's statement of facts is incomplete or unsupported by the record since the facts of which respondents complain are not material to the issues on appeal.

impressions because she knew Montoya knew what she was doing and knew how to perform an appropriate impression. Montoya made the ear impressions for Smith.

Smith was informed that a synthetic mold would be placed into his ears. Montoya first looked in his ears with an otoscope to make sure there was no infection or redness, and nothing blocking the ear canal, which would prevent her from taking a good measurement for the impression. Montoya started with Smith's right ear. She put a cotton block in the ear to prevent the silicone material that is used to make the impression from going too far into the ear canal. She looked in Smith's ear again with the otoscope to make sure the cotton block was properly placed. She then put the silicone material into the ear to make the impression.

Smith complained of pain in his right ear after Montoya began the impression. He asked Montoya to remove the silicone from his right ear. She said she could not remove it until the silicone had hardened. When Montoya removed the impression, she noticed Smith's right ear was bleeding. Tanihana and Montoya looked at Smith's right ear, sprayed it with Afrin to stop the bleeding, and made an appointment for Smith with an ear, nose, and throat doctor for 1:00 p.m. that same day. Smith ultimately canceled the appointment and saw a different ear, nose, and throat doctor through American Idol. There were no issues making the ear impressions for the other contestants.

The doctor prescribed medication to Smith. American Idol paid for the doctor visit and for the prescription. The doctor advised Smith that "it definitely was a perforated [ear] drum, and that it looked like it had also torn [his] ear canal." When Smith returned to the doctor a few days later, he was told "80 percent of

[his] right eardrum was missing" due to the removal of the silicone mold. Through American Idol, Smith saw that doctor at least three more times from December 2014 to April 2015.

*The Contestant Agreement*

Each contestant must sign and agree to a contract entitled "American Idol" – Season XIV Contestant Agreement, Personal Release and Arbitration Provisions (Contestant Agreement). Smith received the Contestant Agreement in person and had approximately three to four weeks to review it. Smith "thumbed through" and "skimmed over pieces" of the Contestant Agreement. He signed and initialed the Contestant Agreement on August 7, 2014. Smith understood he would not be able to proceed as a contestant on American Idol if he did not execute the Contestant Agreement.

Section D of the Contestant Agreement sets forth the waiver and release provisions at issue in this case (Section D). Its heading reads: "ACKNOWLEDGMENT AND ASSUMPTION OF RISK: RELEASES, WAIVERS AND INDEMNIFICATIONS." Smith initialed next to each of the relevant provisions in Section D, and there is no dispute on appeal that Section D's protections apply to every respondent. The relevant waiver and release provisions are as follows:

"**3. Supplies and Services Furnished by Producer to Contestants.** I understand that Producer directly and/or through independent contractors will provide various services and equipment in connection with the Program and its contestants. These services and equipment may include, but are not limited to the operation and management of the sites of the Program; air and other travel in connection with the Program; transportation to, from and about the sites of the Program;

4

provision of hotel or other living accommodations; provision of food, water and equipment training for my participation in the Program; supervision of other activities related to the Program; and medical, psychological and first aid services. I acknowledge that neither Producer nor any contractor, employee or third party providing equipment or services in connection with the Program has made any warranties whatsoever with respect to the equipment or services which they furnish in connection with the Program or which the contestants may otherwise use, and that there are no warranties of any kind from anyone regarding the fitness or suitability of any equipment or services for use for any purpose in connection with the Program. I hereby waive any right I might otherwise have to warnings or instructions regarding any aspect of the Program or the equipment or services utilized in connection therewith."

"**7. Assumption of Risk of Unknown or Undiscovered Facts, Claims or Defects, and Release of Released Parties.** I and the other Releasing Parties acknowledge that there is a possibility that after my execution of this Agreement, I or they will discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed and which, if known by me or them at that time, may have materially affected my or their decision to execute this Agreement. I and the other Releasing Parties acknowledge and agree that by reason of this Agreement, and the release contained in the preceding paragraphs, I and the other Releasing Parties are assuming any risk of such unknown facts and such unknown and unsuspected claims. I and the other Releasing Parties have been advised of the existence of Section 1542 of the California Civil Code which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding such provisions, this release shall constitute a full release in accordance with its terms.  I and the other Releasing Parties knowingly and voluntarily waive the provisions of Section 1542, as well as any other statute, law, or rule of similar effect, and acknowledge and agree that this waiver is an essential and material term of this release and this Agreement, and without such waiver Producer would not have accepted this Agreement or my participation in the Program. I and the other Releasing Parties understand and acknowledge the significance and consequence of this release and of this specific waiver of Section 1542 and other such laws."

**"8. <u>Waiver of All Claims and Suits; Released Claims</u>.** To the maximum extent permitted by law, I and the other Releasing Parties hereby irrevocably agree that I and the other Releasing Parties will not sue or bring any claim against any of the other contestants, judges, host, guest stars, mentors, and/or any other contestants in the Program or the Released Parties for any injury, illness, damage, loss or harm to me or my property, or my death, howsoever caused, resulting or arising out of or in connection with any defect in and/or failure of equipment and/or facilities, including but not limited to, the global voting system, set design, warnings or instructions, preparation for, travel and living accommodations in connection with, participation and appearance in, withdrawal or elimination from the Program or

any and all activities associated with the Program. In addition, I and the other Releasing Parties hereby unconditionally and irrevocably release and forever discharge each of the Released Parties, the other contestants in the Program, the judges, host, guest stars, and other contestants of the Program from and against any and all claims, liens, agreements, contracts, actions, suits, costs, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden (collectively, the "Released Claims") arising out of or in connection with my preparation for, travel and living accommodations in connection with, participation and appearance in, and withdrawal or elimination from the Program or activities associated with the Program or the production and exploitation of the Program, including, without limitation, claims for injury, illness, damage, loss or harm to me or my property, or my death. The Released Claims shall include, but not be limited to, those based on negligence of any of the Released Parties, the other contestants in the Program, the judges, host, guest stars, mentors, or other contestants of the Program, products liability, breach of contract, breach of any statutory or other duty of care owed under applicable laws, defamation, invasion of privacy, publicity or personality, infringement of copyright, and those based on my possession or use of any prize. In connection with the foregoing, I agree to have my immediate family members execute the Immediate Family Release, as described in Section A.19."

*Procedural Background*

Smith brought suit against respondents and others who are not parties to this appeal for the injury to his ear. As to respondents, he stated a single negligence cause of action, alleging they breached their duty of care when he was fitted with the silicone mold and their negligence caused injury to his ear.

Respondents moved for summary judgment, relying on Section D to argue Smith released them from liability for negligence, he expressly assumed the risk of unknown claims or undiscovered facts, and he waived any warranties of the services provided to him in connection with his participation in American Idol. Smith opposed, arguing the Contestant Agreement was unenforceable because it was both procedurally and substantively unconscionable. He further argued any release or waiver was inapplicable to a claim for gross negligence rather than ordinary negligence. The trial court granted summary judgment in favor of respondents. Smith timely appealed.

## DISCUSSION

### I.  Standard of Review

A defendant moving for summary judgment or summary adjudication must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).) Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne,*

8

*LLC* (2017) 2 Cal.5th 536, 542 (*Perry*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.)  It is no longer called a "disfavored" remedy.  Rather, it is "now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Perry*, *supra*, at p. 542.)

On appeal from a grant of summary judgment, we review the record de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We also resolve any evidentiary doubts in favor of the party opposing summary judgment.  (*In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 151.)  Under de novo review, we affirm or reverse the trial court's ruling, not its rationale.  (*Id.* at p. 150.)  "Thus, '[t]he sole question properly before us on review of the summary judgment [order] is whether the judge reached the right *result* . . . whatever path he [or she] might have taken to get there.' " (*Id.* at pp. 150–151.)

## II.  Unconscionability

Smith contends Section D is procedurally unconscionable because he lacked the ability to negotiate its terms, and the challenged release and waiver provisions were hidden in the middle of a dense contract that was more than 20 pages long.  Smith contends Section D is also substantively unconscionable because it required him to waive statutory rights and remedies available to him.  We conclude Smith has failed to demonstrate Section D contains anything more than a low degree of procedural unconscionability and a complete lack of substantive unconscionability.  As a result, there does not exist a dispute of

material fact as to the enforceability of the Contestant Agreement.

## A. The Doctrine of Unconscionability

Persons generally have a duty to use due care to avoid injuring others, and liability may result if their negligent conduct causes injury to another. (Civ. Code, § 1714; *Knight v. Jewett* (1992) 3 Cal.4th 296, 315.) A private party may expressly agree to release claims of negligence against another by contract unless it impacts the public interest. (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 758 [future liability for ordinary negligence generally may be released] (*Santa Barbara*); 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1292, p. 686.)

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5.) "Unconscionability is a flexible doctrine. It is meant to ensure that in circumstances indicating an absence of meaningful choice, contracts do not specify terms that are 'overly harsh,' 'unduly oppressive,' or 'so one-sided as to shock the conscience.' [Citations.]" (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 982.)

Both procedural and substantive unconscionability must be shown for the defense to be established, but " 'they need not be present in the same degree.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) " 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.

10

[Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*Ibid.*) " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' " conclude that the term is unenforceable and vice versa. (*Ibid.*; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

" '[C]ourts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness beyond "a simple old-fashioned bad bargain." ' [Citation.] This latter qualification is important. Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable.' [Citation.] . . . [¶] . . . The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' [Citation.]" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245 (*Baltazar*), italics omitted.)

## B. Section D of the Contestant Agreement is Not Unconscionable

Smith's procedural unconscionability claim primarily relies on the "take-it-or-leave-it" nature of the Contestant Agreement. Respondents acknowledge that Smith would not have been able to participate in American Idol if he had not executed the

11

Contestant Agreement. However, that a contract is one of adhesion is not the end of the inquiry.

"To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, 'the beginning and not the end of the analysis insofar as enforceability of its terms is concerned.' [Citation.] Thus, a contract of adhesion is fully enforceable according to its terms [citations] unless certain other factors are present which, under established legal rules— legislative or judicial—operate to render it otherwise." (*Graham v. Scissor–Tail, Inc*. (1981) 28 Cal.3d 807, 819–820, fns. omitted; accord *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1470.)

In *Baltazar, supra,* 62 Cal.4th at pages 1245–1246, the California Supreme Court found that "while the contract was adhesive in nature, there was no element of surprise. Baltazar not only knew about the arbitration agreement, but initially sought to avoid it, ultimately deciding to accept it because Forever 21 was not willing to offer the job on other terms. Nor was there any oppression or sharp practice on the part of Forever 21. Baltazar was not lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement. The adhesive nature of the employment contract requires us to be 'particularly attuned' to her claim of unconscionability [citation], but we do not subject the contract to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp practices' [citation]."

Likewise, the Contestant Agreement, while adhesive in nature, did not involve surprise or other sharp practices. Smith presents no evidence of such. Instead, Smith acknowledges he was given weeks to review the agreement and could have sought

12

legal advice if he wished.  Section D was written in plain language and each provision within section D was initialed by Smith separately.  The heading of each provision, presented in bold-faced type and underlined, disclosed its subject in plain language:  "Assumption of Risk of Unknown or Undiscovered Facts, Claims or Defects;" "Waiver of All Claims and Suits;" and "No Representations or Warranties from Producer."

These facts belie Smith's characterization of Section D as "hidden" in a dense document that is more than 20 pages long. (See *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 729 [challenged provision contained a large type heading and required the purchaser to initial preceding it]; *Hulsey v. Elsinore Parachute Ctr.* (1985) 168 Cal.App.3d 333, 345 ["It is hard to imagine that plaintiff, after having initialed the agreement in three places and signed it in one could have harbored any *reasonable* expectations other than what was unambiguously recited in the title and text of the agreement."].) Further, Smith presents no evidence respondents lied to him, placed him under duress, or otherwise manipulated him into signing the Contestant Agreement.

Applying the reasoning in *Baltazar*, we conclude the Contestant Agreement contains a low degree of procedural unconscionability that does not require the same level of scrutiny as contracts of adhesion that involve surprise or other sharp practices.  Under the sliding scale analysis articulated in *Armendariz*, then, a high degree of substantive unconscionability would be required to defeat enforcement of Section D. (*Armendariz, supra*, 24 Cal.4th at p. 114; *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796 (*Ajamian*).)

13

We therefore turn to consider what degree of substantive unconscionability was shown by Smith.

Smith argues the waiver of his right to recover for respondents' negligence automatically renders Section D substantively unconscionable. We disagree. In *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 98 *(Tunkl),* the Supreme Court held that a private party may expressly agree to release another from future liability for ordinary negligence so long as it does not violate public policy. Smith does not argue his participation in American Idol involves a public interest under *Tunkl* that would invalidate Section D.

Instead, Smith relies on *Ajamian, supra,* 203 Cal.App.4th at page 799 and *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 409–410 (*Leaf*) to assert a waiver of his rights under Civil Code section 1542 renders Section D substantively unconscionable. Neither case supports his argument.[2]

---

[2] Smith also relies on several federal cases for the proposition that a general release of the protections of Civil Code section 1542 does not apply to unknown or unsuspected claims. We need not rely on or distinguish federal cases interpreting California law when California courts have provided ample guidance on an issue. (See *Aleman v. AirTouch Cellular* (2012) 209 Cal.App.4th 556, 576, fn. 8.) Nonetheless, Smith's reliance on these cases is misplaced. In *Kaufman & Broad-S. Bay v. Unisys Corp.* (N.D. Cal. 1993) 822 F. Supp. 1468, a case cited by Smith, the district court recognized, "The parties to a release may be bound by a waiver of [Civil Code section 1542]'s protection if they understand and consciously agree to the waiver." (*Id*. at p. 1474.)

In *Ajamian,* the court found the challenged provision to be unconscionable because it waived statutory rights and remedies that were unwaivable. (*Ajamian, supra,* 203 Cal.App.4th at p. 799.) Smith presents no authority to support an argument that rights under Civil Code section 1542 are similarly unwaivable. Instead, California courts have long recognized a waiver of Civil Code section 1542 protections to be valid. (*Kostick v. Swain* (1953) 116 Cal.App.2d 187, 194 ["where the parties involved in action for negligence expressly and intentionally settle for unknown injuries," release is incontestable]; *Larsen v. Johannes* (1970) 7 Cal.App.3d 491, 504 [mutual release of claims and obligations under Civil Code section 1542 held valid].)

In *Leaf*, the plaintiffs settled a lawsuit against the sellers and developers of a property they purchased. The settlement agreement contained a prospective release of unknown claims applying to "all others." (*Leaf, supra,* 104 Cal.App.3d at pp. 403–404.) In a second lawsuit, the plaintiff sued the City of San Mateo, alleging liability based on the condition of city property "which not only contributed to the property damage of which plaintiffs were previously aware, but which plaintiffs allege independently caused them damage in the form of tripled or quadrupled cost of repair." (*Id.* at p. 410, fn. omitted.) The court rejected the city's claim on summary judgment that the release from the first lawsuit of "all others" included the city. (*Ibid.*) The court reasoned, "mere recital, as in the release signed by plaintiffs, that the protection of Civil Code section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling. Whether the releaser intended to discharge such claims or parties is ultimately a question of fact." (*Id.* at p. 411.)

*Leaf* is distinguishable because the question there --
whether the release of "all others" in the first settlement included
the city -- was a question of fact.  There is no similar factual
dispute regarding whether Section D applies to respondents.
We agree with the trial court's observation that "to the extent
that Plaintiff disputes certain material facts related to the
contract [citation to record] the dispute is not as to the fact that
certain terms existed in the Contract, but only as to the
applicability of the terms pursuant to Plaintiff's arguments in
opposition related to unconscionability."  Here, there are no
disputes of material fact.  Smith has failed to meet his burden to
demonstrate substantive unconscionability.[3]

## III.   Gross Negligence

Smith next contends he has asserted a claim for gross
negligence, which does not fall within the scope of Section D.
Respondents argue Smith has waived the issue because gross
negligence was not pled in his complaint.  We conclude the issue
is not waived but that summary judgment was nevertheless
properly granted.  Smith failed to meet his burden to present
evidence of a triable issue as to whether respondents acted with
gross negligence.

Gross negligence is not a separate and distinct cause of
action from negligence.  (*Jimenez v. 24 Hour Fitness USA, Inc.*
(2015) 237 Cal.App.4th 546, 552, fn. 3.)  Rather, gross negligence
is distinct from ordinary negligence by degree.  (*Anderson v.
Fitness Internat., LLC* (2016) 4 Cal.App.5th 867, 881.)

---

[3]   Since we conclude summary judgment was properly
granted because of the release and waiver provisions contained in
Section D, we need not address Smith's contention that
respondents' assumption of risk argument is unavailing.

16

Ordinary negligence results from " 'mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty.' " (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 48.)  By contrast, " '[g]ross negligence' long has been defined in California and other jurisdictions as either a ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of conduct.' " ' " (*Santa Barbara, supra*, 41 Cal.4th at p. 754.)

In *Santa Barbara,* the Supreme Court held an agreement to release a party from future gross negligence is unenforceable as a matter of public policy.  (*Santa Barbara, supra*, 41 Cal.4th at p. 751.)  The high court explained its holding did not establish a separate cause of action for gross negligence but "simply impose[d] a limitation on the defense that is provided by a release.  A plaintiff is not required to anticipate such a defense [citation]; instead, the defendant bears the burden of raising the defense and establishing the validity of a release as applied to the case at hand." (*Id.* at p. 780, fn. 58.)  Once the defendant has established the validity of a release, the burden shifts on summary judgment to the plaintiff to show "there exists a material triable issue regarding gross negligence." (*Id.* at p. 781, fn. 61.)

Here, respondents asserted Section D was valid to defend against Smith's negligence claim.  Smith, in turn, opposed respondents' summary judgment motion, asserting, among other things, that Section D did not release them from liability for gross negligence.  Beyond making this argument, however, Smith failed to present any evidence to demonstrate Montoya's actions constituted gross negligence.

Smith acknowledges in his reply brief that "[e]vidence of conduct that evinces an extreme departure from safety directions or an industry standard could demonstrate gross negligence." (*Willhide-Michiulis v. Mammoth Mountain Ski Area, LLC* (2018) 25 Cal.App.5th 344, 365.) Yet, he presented no evidence that Montoya deviated from safety directions or industry standards in making the impression of his ear or in taking it out. Instead, Smith relies on his own testimony that Montoya "yanked" the silicone out of his ear and the fact of his injury to support his claim of gross negligence. This alone does not create a dispute of material fact that Montoya displayed a " ' " 'want of even scant care' " ' or ' " 'an extreme departure from the ordinary standard of conduct.' " ' " (*Santa Barbara, supra,* 41 Cal.4th at p. 754.)

Smith contends he should be allowed to amend his complaint to allege gross negligence "[i]f the Court does not agree with Mr. Smith's contentions regarding the triable disputes of material facts." Any amendment to the complaint would have no bearing on our decision. Summary judgment was properly granted because Smith failed to meet his burden to demonstrate that a triable issue exists regarding gross negligence, not because he failed to allege it in his complaint.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

BIGELOW, P. J.

We concur:

GRIMES, J.          STRATTON, J.

18